**ANDERSON MATTRESS COMPANY, INC., Appellant–Plaintiff,**

v.

**FIRST STATE INSURANCE COMPANY, Defendant–Appellee Cross–Appellant,**

v.

**J.W.F. INSURANCE COMPANIES, INC. d/b/a J.W. Flynn Company, Swett & Crawford, Inc. and Cameron & Colby Company, Inc., Appellees–Defendants.**

No. 30A05–9205–CV–159.

Court of Appeals of Indiana, Fifth District.

July 19, 1993.

Transfer Denied Oct. 12, 1993.

Stephen E. Arthur, V. Samuel Laurin III, Bose McKinney & Evans, Indianapolis, for appellant-plaintiff.

Robert M. Baker, Johnson Smith Densborn, Wright & Heath, Indianapolis, for appellee-defendant Swett & Crawford, Inc.

Michael E. Brown, Jeffrey A. Doty, Kightlinger & Gray, Indianapolis, for appellee-defendant, J.W.F. Insurance Companies, Inc. d/b/a J.W. Flynn Co.

James A. Goodin, Patrick L. Miller, Goodin & Kraege, Indianapolis, for defendant-appellee-cross-appellant, First State Ins. Co.

SHARPNACK, Chief Judge.

The plaintiff, Anderson Mattress Co. (Anderson), filed this action and first sought a declaratory judgment establishing that the policy of insurance which Anderson had procured from defendant First State Insurance Co. (First State) was a blanket coverage policy and not a scheduled coverage policy as asserted by First State. The complaint also alleged in the alternative that defendant J.W.F. Insurance Co., doing business as J.W. Flynn Co., (Flynn) negligently failed to procure blanket insurance for Anderson. Flynn filed an answer in which it named Swett & Crawford, Inc. (Swett) and Cameron & Colby Co. (Cameron) as nonparty defendants. Anderson then amended its complaint to add Swett and Cameron as named defendants and alleged that they also breached a duty to procure blanket coverage for Anderson.

First State, Flynn, and Swett all filed motions for summary judgment. First State's motion contended that it had not breached the contract of insurance because the contract provided scheduled coverage. Flynn's motion contended that it had not breached a duty to procure the correct coverage for Anderson because the policy issued by First State was for blanket coverage as Anderson had requested. Swett's motion agreed with Flynn's that the policy was blanket and that, as a consequence, Swett had breached no duty to Anderson.

The trial court entered judgment on behalf of Flynn and Swett on their respective motions but denied First State judgment on its motion. The court's rulings on the motions made it clear that the court found that the policy issued by First State provided Anderson with blanket coverage.

We reverse the denial of First State's motion for summary judgment and entries of summary judgment in favor of Flynn and Swett and remand this case for further proceedings.

The parties have raised a variety of issues, which we consolidate and restate as follows:

I  Was the policy issued by First State a blanket or a specific coverage policy?

II  If the policy issued by First State was a specific coverage policy, did Swett breach any duty which it may have owed to Anderson?

III  Did Anderson waive its right to appeal the summary judgment in favor of Flynn by failing to make an argument in its initial brief?

IV  Does First State have standing to appeal the entry of judgment in favor of Flynn?

V  Did Anderson waive any claim against Swett for failing to procure blanket coverage by accepting a policy which Anderson knew or had reason to know was for specific coverage?

VI  Was Anderson estopped to claim that Swett violated a duty to procure for it a blanket policy because Anderson accepted a policy that it knew or had reason to know was for specific coverage?

## FACTS

Anderson manufactured mattresses at a facility located in the city of Anderson. In 1989 Flynn presented Anderson with a proposal to procure insurance on behalf of Anderson. The proposal stated that Flynn would solicit quotes for blanket coverage. On the basis of this proposal, Flynn prepared an application for insurance for Anderson. The application requested blanket coverage for the Anderson buildings and their contents as well as blanket coverage for loss of business income.

The insurers with which Flynn normally dealt were not willing to insure a mattress factory,[1] so Flynn had to seek insurers outside its normal market. Flynn retained Swett to seek out an insurer that would be willing to cover the Anderson mattress works.

Swett sought quotes from several carriers using the application that Flynn had prepared earlier. First State responded to the application which Flynn had prepared and Swett had forwarded by submitting a quote to Swett.[2] Swett apparently believed that First State was quoting blanket coverage because First State never informed Swett that First State had rejected blanket coverage and was quoting a rate for specific coverage.

Eventually the brokers obtained a policy from First State which was effective from March 1, 1989, through March 1, 1990. After Anderson received the policy, one of its employees called Flynn to make sure that the policy was for blanket coverage. Flynn's representative assured Anderson's employee that the policy provided blanket coverage.

When the time for renewal came, Flynn sent another application to Swett requesting blanket coverage and presented Anderson with a proposal that stated that the brokers would be seeking blanket coverage on Anderson's behalf. Swett again obtained a quote for coverage from First State. Swett maintains that First State never informed it that First State was quoting specific and not blanket coverage.

First State issued a renewal policy that contained provisions substantially similar to those contained in the first policy. When Anderson received the policy in late May or early June of 1990, one of Anderson's representatives called Flynn to confirm that the policy provided blanket coverage. Once again, Flynn's agent stated that the policy provided blanket coverage.

A fire destroyed much of the Anderson factory and attendant facilities on June 8, 1990. The fire also caused a substantial interruption in Anderson's business. Anderson filed a claim with First State seeking payment under the policy. Anderson, assuming that its claim would be

---

**1.** Mattress manufacturers are apparently difficult to insure because the materials used to manufacture mattresses are flammable.

**2.** First State apparently responded through Cameron & Colby Co., yet another broker and a defendant in this action. Cameron & Colby is not a party to this appeal.

adjusted on the basis of blanket coverage, expected to receive $1,865,407.74. First State adjusted the policy on a specific basis, however, and limited the recovery for each scheduled piece of property to the value assigned on the schedule. In accordance with this manner of adjustment, First State paid Anderson $1,329,611.11, some $535,796.63 less than Anderson would have received had the claim been adjusted on the basis of blanket coverage.

## ISSUE I

This case stands in an odd posture. Anderson, which at least nominally is the appellant, offers no argument on what is the core issue in this case—whether the policy provided by First State provided blanket or specific coverage. Because the resolution of the remaining issues largely depends on the resolution of this issue, we address the contentions of the parties that do offer argument on this issue first.

First State argues that the trial court erroneously entered summary judgment in favor of Anderson because the insurance agreement between the parties unambiguously provided for specific coverage. In support of this argument, First State quotes 15 *Couch on Insurance 2d* § 54:83 for the proposition that a schedule of property values in an insurance policy renders the policy coverage specific and not blanket:

> "A distinction must be made between a policy which speaks in terms of a lump-sum obligation or value of the property and one which separately schedules different items of property. In the latter case, each separately treated item of property is in effect covered by a separate contract of insurance and the amount recoverable with respect to a loss affecting such property is determined independently of other items of property."

In addition, First State asserts that Indiana precedent comports with this view, citing *Vernon Fire and Casualty Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173.

In *Vernon*, the insured procured two fire insurance policies, each of which was to insure a prorated share of any fire loss that might occur at Sharp's business. Each of the policies contained a schedule of values for individual items of real and personal property belonging to the business. A fire damaged Sharp's business and caused itemized losses in the amount of $94,108.09. This figure was derived by adding together the losses on each item of property that was damaged by the fire. However, although the total loss was within the total value of the policies, losses on some of the individual pieces of property exceeded the value assigned them in the policy schedules while other pieces of scheduled property suffered no damage. As a consequence, the total value of the loss sustained exceeded the total stated value of those pieces of property which were damaged or destroyed.

The insurer refused to pay the entire amount to which Sharp would have been entitled under blanket coverage, and Sharp filed suit. The trial court awarded Sharp compensatory and punitive damages. The compensatory damage award was supportable only if the policies provided blanket coverage.

The supreme court opinion was authored in part by Justice Hunter and in part by Justice Prentice. Justice Prentice, who authored that portion of the opinion which dealt with the question of whether the policies provided blanket or specific coverage, wrote for the court that, because they separately scheduled values for individual pieces of property, the policies provided specific, and not blanket, coverage:

> "However, these were not 'blanket' policies but were 'scheduled' policies, i.e. the property insured was separately scheduled and valued in the contracts. *The liability of the insurers under such policies is limited as to each scheduled item, and a portion applying to one item but unused may not be transferred to another item which was under-valued and thus underinsured.*"

*Vernon*, 264 Ind. at 603, 349 N.E.2d at 177 (emphasis added).

First State asserts that it is undisputed that the policy it issued to Anderson contained a schedule that assigned limits to the individual pieces of property that comprised the mattress business. First State asserts that the holding in *Vernon* makes it clear that the presence of this schedule rendered the policy specific.[3]

Flynn argues that the policy provided blanket coverage as a matter of law. Flynn contends that the policy is ambiguous and thus open to construction. Flynn then cites *Tate v. Secura Insurance* (1992), Ind., 587 N.E.2d 665, 668 and *Property Owners Insurance Co. v. Hack* (1990), Ind. App., 559 N.E.2d 396, 402 for the proposition that ambiguous insurance contracts are to be construed most strongly against the insurer.

In Flynn's view, the insurance policy issued by First State is ambiguous because the declarations page contains language stating that the policy limit applies per occurrence.[4] Flynn notes that one of First State's employees testified that the "per occurrence" language in an insurance contract meant that the contract extended blanket coverage. Thus Flynn asserts that the policy contains some language indicating blanket coverage and the policy is at least ambiguous.

Flynn also argues that blanket coverage is rated on an average or composite basis, and that the First State policy was so rated. In addition, Flynn asserts that blanket policies are excess policies and asserts that the First State policy was an excess policy. In Flynn's view, these factors provide additional support for the conclusion that the policy provided blanket coverage.

Flynn attempts to distinguish *Vernon* by noting that the policy in *Vernon* limited recovery to a "pro-rata proportion of and on the following amounts...." (Flynn Brief, p. 19.) Flynn argues that the policy in this case did not contain similar language, and Flynn asserts that the absence of such language means that this policy, unlike the policy in *Vernon*, provided blanket coverage. Flynn also attempts to distinguish *Bratton* by pointing out that the policy in *Bratton* apparently did not state that the coverage was per occurrence. Thus, in Flynn's view, the policy in *Bratton* was not ambiguous and subject to interpretation.

The other two parties have not really contested this issue. Swett offers no argument on the question of whether the policy offered blanket or specific coverage, and, although Anderson's brief purports to raise two issues, it only contains argument on the question of whether Swett breached a duty to procure for Anderson a particular type of policy. Anderson explicitly refuses to take any position on the question of whether the policy extends blanket or specific coverage.

■ Our examination of the First State policy in light of present Indiana law leads us to the conclusion that the policy extends specific coverage. The first page of the First State policy states:

"In consideration of the stipulations herein named and of the premium above specified the Company does insure the Insured named above, hereinafter called the Insured, whose address is shown above, from the inception date shown above, to the expiration day shown above, at noon, Standard Time at place of issuance, to an amount not exceeding the amount(s) above specified, on the following described property:

AS PER THE ATTACHED FORMS:
C–58
C–53–C
C–58–2
MP 1205
ENDORSEMENT #1

---

**3.** As additional support for its position, First State cites *Bratton v. St. Paul Surplus Lines, Inc.* (1986), 17 Ark.App. 193, 706 S.W.2d 189, a case in which the Arkansas Court of Appeals decided that the presence of a schedule of values in a policy rendered the policy coverage specific.

**4.** The policy defined "occurrence" to "mean any one loss, disaster, or casualty or series of losses, disasters, or casualties arising out of one event."

ENDORSEMENT #2

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements may be added hereto, as provided in this policy."

(Record, p. 148). In a section entitled "SUMS INSURED" the policy stated, "At Named Location(s) $2,702,000 per occurrence." (Record, p. 149.) The policy definition of occurrence provided, "As used herein, Occurrence shall mean any one loss, disaster, or casualty, or series of losses, disasters, or casualties arising out of one event." (Record, p. 149.) The section of the policy setting the limits of liability provided:

"The Limit of Liability or Amount of Insurance shown on the face of this policy is a limit of amount per occurrence. Notwithstanding anything to the contrary contained herein, in no event shall the liability of this Company exceed this limit or amount in one occurrence as defined on Page 1 of this form.

The premium for this policy is based upon the Statement of Values on file with the Company, or attached to this policy. In the event of loss hereunder, liability of the Company shall be limited to the least of the following:

(a) The actual adjusted amount of loss, less applicable deductible(s).

(b) The total stated value of the property involved, as shown on the latest Statement of Values on the [sic] with the Company, less applicable deductible(s).

(c) The Limit of Liability or Amount of Insurance shown on the face of this Policy or endorsed onto this Policy."

(Record, p. 154.)

The policy also contained an endorsement valuing the various pieces of property that comprised Anderson's business. This endorsement contained the following clause:

"Designation of premises, as stated in the Declarations, is extended to include the following and insurance is provided with respect to those premises described below and with respect to those coverages and kinds of property for which a specific limit of liability is shown, subject to all the terms of this policy including forms and endorsements made a part hereof:"

(Record, p. 164.) Immediately below this clause is a table listing the individual pieces of property comprising the business. One of the columns was capped with the heading "Limits of Liability" and contained monetary values for each piece of real property, for the contents of each piece of property, and for the cost of business interruption attributable to the loss of each piece of property. Viewed in the light of *Vernon* and *Bratton,* these portions of the policy extend specific coverage because they clearly establish limits of liability for each specific piece of property comprising the business instead of a single limit of liability for the business as a whole.

■ In addition, for purposes of this issue, we reject Flynn's attempts to refer to the applications in order to show that the policy provided blanket coverage or at least to show that the policy was ambiguous with regard to this issue. Applications for insurance are not part of the policy unless specifically incorporated by the policy. *Citizens Insurance Co. v. Hoffman* (1891), 128 Ind. 370, 373, 27 N.E. 745, 747. Because there is nothing in the policy which explicitly makes the application part of the policy, the terms of the application cannot be used to create an ambiguity in the insurance policy.

We have found that the policy grants specific coverage, and we therefore reverse the denial of First State's motion for summary judgment.

ISSUE II

The following is a summary of the arguments contained in Anderson's initial appellant's brief and reply brief.[5] In its initial

<hr>

5. In its appellant's brief, Anderson did not argue that the summary judgment in favor of Flynn should be overturned, although Anderson did argue the point in its brief replying to Flynn's

brief, Anderson argues only that Swett breached its duty to procure blanket coverage. In the reply brief, however, Anderson does attempt to argue that Flynn was liable.

Anderson claims that Swett owed it a duty to procure a policy that extended blanket coverage to Anderson.[6] The applications prepared on Anderson's behalf specifically requested blanket coverage. Anderson argues that, because Swett undertook to assist Flynn in procuring insurance for Anderson on the basis of applications which requested blanket coverage, Swett assumed a duty to notify Anderson that the First State policy did not extend the type of coverage that Anderson had requested. Anderson cites *Plan–Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212, 1219, for the proposition that one may assume a duty of care either gratuitously or voluntarily. At the very least, argues Anderson, a question of fact remains as to whether Swett's actions gave rise to a duty on behalf of Anderson.

Swett identifies four distinct duties upon which Anderson's claim could have been based: the duty to secure and communicate quotes; the duty to persuade First State or Cameron & Colby to provide blanket coverage; the duty to obtain coverage; and the duty to inform Anderson that the coverage provided by the First State policy was specific and not blanket. Swett maintains that it did not breach any of these duties.

With regard to the first of these duties, Swett asserts that Flynn retained Swett to obtain insurance quotes and to relay those quotes to Flynn. Swett concedes that it was bound to use reasonable skill, care, and diligence in performing obtaining and transmitting the quotes. *Bulla v. Donahue* (1977), 174 Ind.App. 123, 126, 366 N.E.2d 233, 238;[7] *Steward v. City of Mount Vernon* (1986), Ind.App., 497

N.E.2d 939, 942–943. Although Swett acknowledges that it owed such a duty, Swett maintains that the undisputed evidence shows that Swett performed its duty in a reasonable fashion. Swett contends that the undisputed evidence showed that Swett received the initial request for quotes from Flynn and sent requests to four different insurers. Two, First State—through Cameron & Colby—and St. Paul's Surplus Lines responded with quotes: First State quoted policy limits of "$2,752,000.00 per schedule" while St. Paul quoted limits of "2,752,000.00 blkt., b.i. blkt. separate." (Record, pp. 1453–1454). Swett forwarded the quotes to Flynn. Anderson, in consultation with Flynn, eventually accepted the First State quote.

When the time came to renew the policy, Swett again obtained and submitted a quote from First State. This quote stated, "Since values are $2,702,000.00 (versus $2,752,000.00 initially last year), annual premium is $14,861.00. All other terms as expiring." (Record, pp. 1473–1474). Anderson accepted the policy as quoted. Swett argues that there is no evidence that it did not discharge its duties in a reasonable, skillful, careful, and diligent manner. In short, Swett argues that the uncontroverted evidence establishes that no breach of duty occurred.

Swett next asserts that Anderson claims that Swett breached a duty to persuade First State or Cameron to provide the blanket coverage which Anderson had requested. In essence, Swett argues that it had no such duty and, in fact, that its duty was limited to obtaining and relaying quotes as discussed above.

The third duty that Swett addresses is the duty to obtain coverage for Anderson. Swett concedes that Indiana law requires an agent retained to procure

---

appellee's brief. Anderson's failure to allege any error with regard to Flynn's judgment gives rise to one of the waiver arguments which are discussed below.

**6.** Anderson bases this argument on the assumption that the policy did not grant blanket coverage.

**7.** *Bulla* is of questionable value as precedent. There was no true majority opinion but was instead an opinion with one judge concurring in result.

insurance for another to use reasonable skill, care, and diligence to obtain the desired insurance. *Steward,* 497 N.E.2d at 942; *State Farm v. Fort Wayne National Bank* (1985), Ind.App., 474 N.E.2d 524, 576; *Stockberger v. Meridian Mutual Life Insurance Co.* (1979), 182 Ind.App. 566, 576, 395 N.E.2d 1272, 1279. An agent may thus be held to answer in damages if his principal suffers a loss after the agent has failed to obtain insurance. The agent also incurs a duty to inform the principal if he is unable to procure the requested insurance. Swett asserts that the undisputed evidence shows that it fulfilled its duty to obtain insurance for Anderson because the record establishes that Swett obtained a quote from First State which resulted in Anderson procuring insurance coverage from First State.

The final duty that Swett identifies is the duty to inform Anderson that the First State policy did not provide blanket coverage. While Swett concedes that such a duty may arise under certain circumstances, Swett argues that the duty did not arise under the circumstances of this case.

Swett asserts that the undisputed evidence establishes that Anderson received and read the first policy, received the renewal policy, and understood that the terms of the renewal policy were the same as those of the first policy. Swett then cites several cases for the proposition that the insured has a duty to read and have knowledge of the contents of its insurance policy. *Metropolitan Life Insurance Co. v. Alterovitz* (1938), 214 Ind. 186, 196, 198, 14 N.E.2d 570, 574, 577; *Village Furniture, Inc. v. Associated Insurance Managers, Inc.* (1989), Ind.App., 541 N.E.2d 306, 308; *Union Assurance Society v. Reneer* (1927), 86 Ind.App. 240, 244, 156 N.E.2d 833, 834; *Ohio Casualty Insurance v. Rynearson* (7th Cir.1974), 507 F.2d 573, 583. Swett asserts that, if the policy afforded specific and not blanket coverage, Anderson must be charged with the knowledge that the policy was specific.

The resolution of this issue hinges on the resolution of a variety of factual and legal sub-issues. These sub-issues involve the related questions of whether Swett owed Anderson any duty to procure a policy or to inform Anderson of the type of coverage extended by the policy that was procured and, if so, what the nature and extent of the duty was.

■ It is settled that one who agrees to procure insurance on behalf of another becomes the agent of the proposed insured and incurs a duty to use reasonable care to procure the desired insurance. *Medtech Corp. v. Indiana Insurance Co.* (1990), Ind.App., 555 N.E.2d 844, 849; *Steward v. City of Mount Vernon* (1986), Ind.App., 497 N.E.2d 939, 942–943; *State Farm Life Insurance Co. v. Fort Wayne National Bank* (1985), Ind.App., 474 N.E.2d 524, 528. Here, there is at least a question of fact as to whether Swett met its duty of reasonable care. By procuring a policy quote which resulted in the issuance of a specific policy of insurance instead of a blanket policy, Swett obtained for its principal a policy with coverage which was far different from that which the principal, Anderson, desired. The difference in coverage substantially harmed Anderson because Anderson did not receive full coverage for its fire loss under the specific policy Swett obtained for Anderson but would have received full coverage under the blanket policy it requested. As a result of this, Anderson sustained a loss in excess of $500,000.00. Under these circumstances it is for the finder of fact to determine whether Swett met its duty of care.

We also find that a question remains as to whether Swett assumed and then breached a duty to inform Anderson that the policy Swett procured on its behalf differed from the policy that Swett was retained to procure. The *Plan–Tec* case recognized that, "Whether a party has assumed a duty, and the extent of such a duty, if any, are questions for the trier of fact." 443 N.E.2d at 1220.

Furthermore, we are not persuaded that Anderson's receipt of a copy of the policy relieved Swett of a duty to inform as a matter of law. While it is true that Anderson had the policy in its possession, it does not necessarily follow that Anderson's

duty to read the policy relieved Swett of its duty to inform Anderson that the policy terms varied from those which Anderson had requested. While older cases such as *Alterovitz* place an almost unconditional duty on the purchaser of a policy to acquaint himself with its contents and to understand them, more modern cases have recognized exceptions to the rule. Thus, in cases such as *Plohg v. N N Investors Life Insurance Co.* (1992), Ind.App., 583 N.E.2d 1233 and *Medtech Corp. v. Indiana Insurance Co.* (1990), Ind.App., 555 N.E.2d 844 this court has held that the insured may be relieved of the duty to read and understand the policy where an agent had made representations about the provisions of the policy.[8] Here, an agent, albeit not Swett, represented to Anderson that the policy afforded blanket coverage as requested by Anderson. In light of this representation, at the very least a question of fact remains as to whether this representation relieved Anderson of the duty to read and understand the policy, and, if so, whether Swett violated a duty to inform Anderson.

## ISSUES III AND IV

Flynn has raised procedural challenges to Anderson's right to maintain its appeal and First State's right to maintain a cross appeal. Flynn argues that Anderson has waived its appeal of the summary judgment entered in favor of Flynn and that First State has no standing to appeal that judgment since the judgment did not prejudice First State. Anderson and First State both argue that Anderson has not waived any claim against Flynn and that First State has standing to appeal the entry of judgment in favor of Flynn. We will address each of these contentions in turn.

In essence, Flynn asserts that Anderson has waived its appeal against Flynn because Anderson has failed to argue on appeal that the trial court erred in finding that the policy provided blanket coverage. Flynn points out that Anderson has not offered any argument in its brief on the question of whether Flynn breached any duty that it may have owed Anderson.

Anderson responds that it has consistently refused to take any position on the question of whether the First State policy afforded specific or blanket coverage. Anderson has refused to take a position in order to preserve its alternative theories of recovery. Thus, Anderson states in its reply brief:

> " ... [Anderson's] appeal is conditional. If this Court affirms the trial court's ruling that the insurance policy provides blanket coverage then there is no error and [Anderson] will proceed against First State. If this Court finds that the insurance policy provides specific coverage then the trial court erred by finding the insurance policy provides blanket coverage."

(Appellant's Reply Brief, p. 5.) Anderson argues that a rule which required Anderson to offer argument on the finding of blanket coverage would force Anderson to choose one exclusive theory of recovery and would conflict with court rules and case precedents which state that alternative, even inconsistent, theories may be plead and pursued through litigation. Ind. Trial Rule 8(E)(2); *Palacios v. Kline* (1991), Ind.App., 566 N.E.2d 573, 576; *Strong v. Commercial Carpet Co.* (1975), 163 Ind. App. 145, 151, 324 N.E.2d 834, 834–835. In addition, Anderson asserts that the trial court would be forced to enter inconsistent judgments if this court reverses the denial of First State's motion for summary judgment but affirms the entry of summary judgment in favor of Flynn.

■ It is true that there is precedent for the proposition that failure to make argument on an alleged error in an appellant's brief waives the error. *See In re Adoption of Federspiel* (1990), Ind.App., 560 N.E.2d 691, 692; *Sebasty v. Perschke* (1980), Ind.App., 404 N.E.2d 1200, 1203; *Yerke v. Batman* (1978), 176 Ind.App. 672, 679, 376 N.E.2d 1211, 1216. Furthermore, an issue waived for want of argument in the appellant's brief may not be resurrected by the offer of an argument in the

---

**8.** In both cases, the question arose in the context of actual or constructive fraud claims.

reply brief. *Saloom v. Holder* (1974), 158 Ind.App. 177, 186, 307 N.E.2d 890, 891.

■ These precedents, however, do not involve a situation such as we have here. Here, the trial court made three judgments affecting Anderson based upon a single legal conclusion—that the policy provided blanket coverage. That conclusion lead to the denial of First State's motion for summary judgment and the granting of the summary judgments of Flynn and Swett. It was unnecessary for the trial court to consider any other issues that may have been presented by the various motions for summary judgement because of its conclusion on coverage.

It is clear from the record and the logic of the situation that Anderson is an appellant as to the summary judgments granted to Flynn and Swett, while First State is an appellant as to the denial of its motion for summary judgment against Anderson.[9] Resolution of the single and common issue—whether the policy provides blanket or specific coverage—determines whether Anderson can proceed against First State to collect on the policy on a blanket coverage basis or can proceed against Flynn and Swett to try to make a case for failure to procure blanket coverage or advise that the coverage obtained was not blanket.

The concept of waiver has as a foundation the principle that we should not resolve issues without the benefit of argument that informs us of the reasoning that could justify a particular resolution. In this case, we have sufficient argument from First State and Flynn on both sides of the coverage issue to make a reasoned decision. The fact that Anderson took a neutral position on that issue and stated in its initial brief as to Flynn only the facts in support of its claim against Flynn and noted that "Anderson ... does not take a position as to whether the Policy provides

for blanket coverage because its claim for the amount will survive either against First State or Flynn, depending on this Court's determination of the issue" does not waive for Anderson the right to a reversal of the summary judgment in favor of Flynn when this court determines that the judgment was based upon an single error that affected each party to these appeals. It would not further the ends of orderly appellate procedure nor fundamental fairness to impose on Anderson the inability to recover from either Flynn or First State merely because Anderson did not present an argument as to Flynn's summary judgment.[10]

Our conclusion here does not represent a retreat from the general requirement for an argument to be made to preserve and present a claim of error. In that regard, this case should be seen as unique. In similar situations in the future, an appellant in Anderson's position would do well to make quite clear its position and argument.

■ Flynn argues that First State has no standing to challenge the court's entry of judgment in favor of Flynn. Normally, one defendant has no standing to appeal a judgment rendered in favor of another unless the defendant suffers some prejudice as a result of the entry of judgment in favor of the co-defendant. *State Highway Commission v. Clark* (1978), 175 Ind.App. 358, 361, 371 N.E.2d 1323, 1326. Flynn argues that First State has suffered no prejudice because it retained the right to appeal the trial court's denial of First State's motion for summary judgment.

With regard to First State's standing to challenge the judgment in favor of Flynn, both Anderson and First State assert that the real dispute in this action is between First State and Flynn. Anderson and First State agree that the trial court's determination that the policy afforded blanket cover-

---

9. In the pre-appeal order, both Anderson and First State were designated as appellants and it was ordered that briefing would begin with the filing of their briefs. Each filed its initial brief on November 9, 1992. Thereafter, Flynn and Swett filed their briefs as appellees, followed by the filing of reply briefs by Anderson and First State.

10. This is not to say that Flynn will ultimately be liable in damages to Anderson. Anderson must still prove to a finder of fact all the elements of its cause of action against Flynn, and Flynn retains the right to advance any defenses it may have.

age to Anderson prejudiced First State. Thus, the two parties argue that First State had the right to argue against the trial court's interpretation of the policy. Anderson further argues that the trial court's rulings on both motions stem from the trial court's interpretation of the policy, and that the summary judgments would be inconsistent if we reverse the denial of judgment for First State but affirm the entry of judgment for Flynn.

■ We conclude that First State had standing to raise the blanket coverage issue because that issue was central to its appeal of the trial court's denial of First State's motion for summary judgment. Because Flynn's motion also hinged on the determination of this issue, we would reach logically inconsistent results as to the different portions of this appeal were we to find that First State had no standing. If we were to accept Flynn's position we would be forced to rule one way with regard to the blanket coverage issue as we considered the appeal of the denial of First State's motion and another when we considered the appeal of the entry of judgment on Flynn's motion. We will not be forced into such inconsistencies, and we therefore find that First State has standing under the circumstances of this case.

## ISSUES V AND VI

Swett claims that Anderson has waived the right to recover against Swett for breach of a duty to procure blanket coverage. In essence Swett argues that, because Anderson twice asked representatives of Flynn whether the policy provided blanket coverage, Anderson must have known, or at least suspected, that there was a problem with the coverage. Swett further asserts that Anderson neither took remedial action nor contacted Swett to raise concerns about the policy. Swett maintains that this failure gave rise to a waiver because, in contract actions, the concept of waiver includes conduct which surrenders "the right to treat a contract as discharged because of the breach of the adversary." (Swett's Appellee's Brief, p. 23 citing *Ogle v. Wright* (1977), 172 Ind.

App. 309, 360 N.E.2d 240 and *Waxman Industries v. Trustco Development Co.* (1983), Ind.App., 455 N.E.2d 376.)

Anderson responds to Swett's waiver argument by asserting that the trial court never addressed this issue and that the issue is not ripe for decision by this court. In addition, Anderson asserts that the record does not support waiver because there is evidence that Anderson relied on Flynn's representations as to the coverage afforded by the policy.

■ Finally, Swett contends that Anderson should be estopped from recovering damages from Swett. Swett cites *State ex rel. Crooke v. Lugar* (1976), 171 Ind.App. 60, 354 N.E.2d 755 for the proposition that a party seeking to prove estoppel must prove the following five elements: 1) that the party to be estopped made representations concerning material facts or concealed material facts; 2) that the party made the representations with knowledge of the facts; 3) that the party to whom the representations were made was ignorant of the facts; 4) that the party making the representations did so with the intent that the other party act on the representations; and 5) that the other party is induced to act. Silence can give rise to an estoppel if there is a duty to speak. *Erie–Haven, Inc. v. First Church of Christ, Scientist* (1973), 155 Ind.App. 283, 291, 292 N.E.2d 837, 842.

Swett argues that Anderson had a duty to object to the coverage that Swett obtained for Anderson if the coverage was not what Anderson wanted. Since Anderson did not do so, Swett argues that Anderson is estopped from recovering any damages. Swett cites *Warner v. Biddell National Bank* (1985), Ind.App., 482 N.E.2d 772 in support of this proposition.

Anderson responds to Swett's estoppel argument by asserting that the trial court never addressed this issue and that the issue is not ripe for decision by this court. In addition, Anderson asserts that the record does not support an estoppel because there is evidence that Anderson relied on Flynn's representations as to the coverage afforded by the policy.

We have found no merit in Swett's assertions of waiver or estoppel. Given the evidence of Flynn's representations concerning policy coverage, a material issue of fact remains as to whether Anderson knew or should have known that the policy differed from the coverage that Anderson desired. The issue is therefore inappropriate for summary disposition, and should be adjudicated before a trier of fact.

The denial of First State's motion for summary judgment and the summary judgments granted to Flynn and Swett were each in error. We therefore reverse each and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

ROBERTSON and RUCKER, JJ., concur.