The DeHAYES GROUP, Appellant–Defendant,

v.

PRETZELS, INC., Appellee–Plaintiff,

v.

Shambaugh & Sons, Inc., and Simerman Construction Company, Inc., Appellees–Defendants.

No. 90A04–0209–CV–429.

Court of Appeals of Indiana.

April 17, 2003.

C. Erik Chickedantz, Jeffrey P. Smith, Hawk, Haynie, Kammeyer & Chickedantz, Fort Wayne, IN, Attorneys for Appellant.

Dane L. Tubergen, Mark W. Baeverstad, Hunt Suedhoff Kalamaros LLP, Fort Wayne, IN, Attorneys for Appellee, Simerman Construction Co., Inc.

Martin P. Duffey, Cozen O'Connor, Philadelphia, PA, Scott T. Niemann, Fletcher & Niemann, Fort Wayne, IN, Attorneys for Appellee, Pretzels, Inc.

Calvert S. Miller, Larry L. Barnard, Miller, Carson, Boxberger & Murphy LLP, Fort Wayne, IN, Attorneys for Appellee, Shambaugh & Sons, Inc.

Richard S. Pitts, Drewry, Simmons, Pitts & Vornehm, Indianapolis, IN, Attorney for Amicus Curiae Independent Insurance Agents of Indiana.

## OPINION

BAKER, Judge.

Appellant-defendant DeHayes Group (DeHayes) appeals the trial court's denial of its summary judgment motion in a negligence action by appellee-plaintiff Pretzels, Inc. (Pretzels) and appellees-defendants Shambaugh & Sons, Inc. (Shambaugh) and Simerman Construction Company, Inc. (Simerman). Specifically, DeHayes argues that the trial court erred in holding that DeHayes owed a duty to inform Pretzels of the reason that an insurer declined to extend coverage. Concluding that DeHayes owed no duty to inform Pretzels of the reason why coverage was refused, we reverse and remand this cause to the trial court for entry of summary judgment in favor of DeHayes.

### FACTS

The facts most favorable to the appellees reveal that DeHayes has served as an independent insurance broker[1] for Pretzels—a manufacturer, packer, and shipper of pretzel snacks—since 1986. DeHayes's responsibility was to procure appropriate insurance coverage to protect Pretzels from casualty and business losses. In order to get the best rates, Pretzels asked various insurers to re-bid on its insurance business every two years. Thus, every two years, DeHayes—as well as other insurance brokers—solicited bids from in-

---

1. We thank amicus Independent Insurance Agents of Indiana, Inc., for its discussion of terminology used in the insurance industry. Its brief assisted the court tremendously in understanding those terms unique to the insurance industry.

surance companies and presented the bids to Pretzels.

Throughout the 1990s, Commercial Union provided Pretzels property and casualty insurance. DeHayes earned a percentage of the premiums paid by Pretzels as a commission for its services. DeHayes's commissions were paid by Commercial Union. Pretzels paid DeHayes nothing.

During the fall of 1995, Pretzels's insurance business was up for re-bidding. Steven Reith, a DeHayes employee, was charged with requesting bids from insurance companies. Reith sought a quote from Amerisure Insurance Company (Amerisure). As a result, Amerisure sent a loss control expert, Deborah Morshead, to inspect Pretzels's facilities in December 1995. During her inspection, Morshead noted that Pretzels stored its plastic materials on racks that were more than four feet tall. Morshead also observed that the sprinkler system was possibly inadequate for the amount of corrugated boxes and wooden pallets in Pretzels's warehouse. As a result of Morshead's evaluation, Joseph Buscemi—an Amerisure underwriter—decided not to quote insurance for Pretzels. Buscemi sent DeHayes a three-sentence facsimile statement wherein he opined that the sprinkler system had an inadequate water supply.

Amerisure's failure to quote insurance notwithstanding, Pretzels received quotes from at least eight other insurance companies acting through five brokers, including DeHayes. Pretzels chose Commercial Union's policy, which became effective on February 9, 1996.

On December 24, 1997, a blaze consumed Pretzels's facilities. Commercial Union paid Pretzels a total of $25,031,220

of which $18,543,720 represented property loss and $6,487,500 represented lost business income. On December 1, 1998, Commercial Union filed a complaint on behalf of Pretzels under its right of subrogation against Shambaugh, Simerman, and two other defendants who eventually were dismissed from this case.[2] Commercial Union asserted that the defendants negligently built Pretzels's facilities, thereby creating a risk of fire. On August 15, 2000, Shambaugh, joined by the other defendants, filed a motion to amend its answer to assert a nonparty defense against DeHayes. Commercial Union resisted Shambaugh's motion, asserting that DeHayes owed no duty to inform Pretzels of inadequacies in its sprinkler system. The trial court granted Shambaugh's motion to amend on October 30, 2000. On July 5, 2001, Commercial Union—with court permission—amended its complaint to name DeHayes as a party-defendant, alleging that DeHayes had a duty to notify Pretzels of any deficiencies in Pretzels's sprinkler system.

On February 22, 2002, DeHayes filed a motion for summary judgment. DeHayes argued that it had no duty to inform Pretzels of Amerisure's reason for not providing coverage inasmuch as its relationship with Pretzels was only one of procuring bids for insurance and passing those bids on to Pretzels. Such a relationship, argued DeHayes, did not raise a duty to advise Pretzels about loss prevention. On May 20, 2002, the trial court denied DeHayes's motion and certified its order denying summary judgment for interlocutory appeal. We accepted jurisdiction over the case, and DeHayes now appeals.

---

2. Though the caption to this case lists Pretzels as the plaintiff, the record indicates that Commercial Union reimbursed Pretzels for its losses as per the insurance contract and proceeded under its right of subrogation. Appellant's App. p. 136. Thus, we identify Commercial Union as the party pursuing the litigation.

## DISCUSSION AND DECISION

### I. Standard of Review

We first note that the party appealing from a denial of summary judgment must persuade the court that the denial of summary judgment was erroneous. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 908 (Ind.2001). Summary judgment is appropriate only if the pleadings and designated evidence show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning*, 754 N.E.2d at 909.

### II. Duty Owed to Pretzels

DeHayes argues that summary judgment should have been entered in its favor because it owed Pretzels no duty other than procuring insurance coverage. Commercial Union counters that sharing "all material knowledge applicable to the risk" being insured against is part of the standard duty that an insurance broker owes to the insured. Pretzels's Br. p. 10.

▇▇ The issue of whether a duty is owed to the plaintiff by the defendant is a question of law for the trial court. *Peak v. Campbell*, 578 N.E.2d 360, 361 (Ind.1991). An insurance broker, like DeHayes, has a "duty to exercise reasonable care, skill, and good faith diligence in *obtaining* insurance." *Wyrick v. Hartfield*, 654 N.E.2d 913, 914 (Ind.Ct.App.1995) (emphasis in original). Here, it is undisputed that De-Hayes successfully obtained insurance for Pretzels. Pretzels's Br. p. 2.

▇▇ An insurance broker's duty may be greater than merely procuring insurance if " 'an intimate long term relationship between the parties or some other special circumstance' " exists. *Id.* (quoting *Cra-ven v. State Farm Mut. Auto. Ins. Co.*, 588 N.E.2d 1294, 1296 (Ind.Ct.App.1992)). This court has held that:

> Some of the factors relevant to a determination of whether a long term relationship or special circumstance exists include (1) the broker's exercise of broad discretion in servicing the insured's needs; (2) the broker's counseling of the insured concerning specialized insurance coverage; (3) the broker's declaration that he is a highly-skilled insurance expert, coupled with the insured's reliance upon the expertise; and (4) the broker's receipt of compensation, above the customary premium paid, for expert advice provided.

*Id.*

In *Wyrick*, the plaintiff asked the defendant, an insurance broker, to obtain quotes for the purchase of a particular type of annuity. Hartfield, the defendant, obtained the quote requested, and Wyrick made the purchase. Later, the insurance company was forced into conservatorship, and Wyrick's benefits from the annuity were reduced. Wyrick brought a claim against Hartfield, claiming that Hartfield breached a duty to advise him concerning the procurement of the annuity. The trial court granted Hartfield's motion for summary judgment, and we affirmed, holding that "Wyrick and Hartfield clearly did not have a long-term relationship which would create a duty to advise." *Id.* at 915. Specifically, we noted that Wyrick engaged in three transactions with Hartfield over a thirteen-year period. *Id.* Hartfield did not have broad discretion with respect to Wyrick's needs, as he "was not asked, nor did he undertake, to provide analysis or periodic review of" Wyrick's needs. *Id.* We also noted that the annuity was of a type requested by Wyrick, not Hartfield. *Id.* Finally, we observed that Hartfield

was not paid a separate fee to provide advice. *Id.*

■ Here, the evidence showed that De-Hayes's relationship with Pretzels began in 1986. Appellant's App. p. 267. However, Pretzels did not rely exclusively on DeHayes to obtain insurance coverage. DeHayes and other insurance brokers obtained insurance quotes for Pretzels, which Pretzels—through general manager Tom Anderson—then either accepted or declined. Appellant's App. p. 133–34. Just as the plaintiff in *Wyrick* ordered his broker to obtain a price quote, Pretzels ordered its insurance brokers to solicit insurance quotes. The final decision, however, was made by Pretzels. These facts do not show that DeHayes possessed "broad discretion" with respect to Pretzels's needs. In essence, DeHayes's actions were limited to obtaining insurance quotes for Pretzels.

The record is also devoid of any evidence showing that DeHayes counseled Pretzels "concerning specialized insurance coverage." *Id.* While DeHayes advised Pretzels to increase its insurance limits in 1996, DeHayes's advice was not about "customized" insurance but merely reflected the fact that additional buildings now existed at Pretzels's manufacturing facility. Appellant's App. p. 136. Moreover, the insurance requested by Pretzels was standard casualty and property insurance, not "a type customized to [Pretzels's] needs." *Id.*

Nowhere has Pretzels claimed that De-Hayes titled itself "a highly-skilled insurance expert." *Id.* Moreover, the final decision on which insurance policy to buy was made by Pretzels's manager. Appellant's App. p. 134.

Finally, the uncontroverted evidence shows that DeHayes was compensated only by Commercial Union on a commission basis. Appellant's App. p. 136. Pretzels paid no "compensation, above the cus-

tomary premium paid, for expert advice." *Id.* In sum, Pretzels's evidence failed to show the special relationship that is required for a heightened duty to be placed on an insurance broker.

Therefore, DeHayes's motion for summary judgment should have been granted. Thus, we reverse and remand to the trial court with instructions to enter summary judgment for DeHayes.

Reversed and remanded.

SULLIVAN, J., and DARDEN, J., concur.