Dale MORGAN, Appellant–Plaintiff,

v.

TACKITT INSURANCE AGENCY, INC., Appellee–Defendant.

No. 32A01–0510–CV–447.

Court of Appeals of Indiana.

Aug. 23, 2006.

995

William O. Harrington, Betty M. Conklin, Danville, IN, Attorneys for Appellant.

Richard S. Pitts, Indianapolis, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

Dale Morgan appeals the trial court's grant of summary judgment to Tackitt Insurance Agency, Inc. ("TIA"). Morgan raises two issues, which we consolidate and restate as whether the trial court erred by granting TIA's motion for summary judgment regarding Morgan's negligence claims. We reverse and remand.

The relevant facts designated by the parties follow. Morgan entered into a purchase agreement to buy the property and residence located at 7058 South County Road 750 East in Plainfield, Indiana. Morgan paid $191,600 for the property and financed $72,000 with Lincoln Federal Savings Bank ("Lincoln Federal"). Lincoln Federal required Morgan to maintain flood insurance on the property equal to the amount of the mortgage loan in order to secure the mortgage.

In November 1999, Morgan requested TIA to obtain flood insurance for the residence. TIA received a quote from the National Flood Insurance Program ("NFIP") of $693 per year for $72,000 worth of coverage. This quote was calculated based on 95¢ per $100 for the first $50,000, 60¢ per $100 beyond $50,000 and $86 in fees. On November 23, 1999, the NFIP sent a letter to TIA, which stated, in part: "The following information is required in order to complete processing of the referenced application for flood insurance. THIS FORM MUST BE COMPLETED AND/OR VERIFIED, SIGNED, MAILED, AND RECEIVED AS SOON AS POSSIBLE TO EXPEDITE PROCESSING." Appellant's Appendix at 147. The "INVALID/MISSING INFORMATION" included the "Construction Date" and the "Agent's 9 DIGIT TAX ID/S.S. NUMBER." *Id.* On January 18, 2000, the NFIP sent another letter to TIA, which stated that the application was miss-

ing an "Elevation Certificate" and "the attached Application Part 2 Form." *Id.* at 149.

On February 24, 2000, the NFIP sent TIA a "TENTATIVE RATED POLICY," which stated " *COVERAGE LIMITS REDUCED* " and indicated that the limit of liability was $30,400 and the total premium was $694. *Id.* at 151. The policy contained the following calculation:

AMT. OF INS.   RATE   PREMIUM
30,400 ×     2.00 =     $608

*Id.* at 36. The policy calculated the total premium as follows:

| | |
|---|---|
| PREMIUM SUBTOTAL | 608.00 |
| COVERAGE D(ICC) | 6.00 |
| EXPENSE CONSTANT | 50.00 |
| FEDERAL POLICY FEE | 30.00 |
| TOTAL PREMIUM | $694.00 |

*Id.* This policy had an inception date of November 12, 1999, and a policy term of one year.

On September 28, 2000, the NFIP sent TIA a notice of non-renewal, which stated:

The above captioned policy is due to expire. Since the information received with the original application was not sufficient to properly rate the . . . the policy that was issued using tentative rates which cannot be renewed. If coverage is desired for another policy term, you must submit a new application and premium with all the necessary rating information and documentation to develop actuarial rates. Failure to provide a new application and premium before the date of expiration will mean that no coverage will be in force to protect your insured against the peril of flood in the event of a property loss.

*Id.* at 153. On October 3, 2000, TIA sent Morgan a letter that stated:

We have received notification from your flood insurance company concerning additional information required. The National Flood Insurance Program requires that you provide the Elevation Certificate for your property located at 7058 S CR 750 E. Plainfield, In. 46168. It is imperative that we obtain the Elevation Certificate and a new application. We will submit both to The National Flood Insurance Program for review and rating.

Your cooperation in providing this information in a timely manner will be greatly appreciated.

*Id.* at 155.

Morgan obtained an elevation certificate dated November 3, 2000. The policy expired on November 12, 2000. On November 17, 2000, TIA faxed the NFIP the current elevation certificate. On November 20, 2000, the NFIP notified TIA that the "elevation certification" was "invalid for flood insurance purposes" because "Part 2 form, Section II" had not been completed. *Id.* at 160. On December 12, 2000, TIA submitted Part 2 again.

On April 1, 2002, the NFIP sent TIA a letter, which stated, in part, "we need the following information to develop rates:" "ORIGINAL photographs of BOTH THE FRONT AND BACK of the building or, if builders risk, the blueprints of the building," "[a] copy of the variance that should have been issued by the community permit official prior to construction," and "AGENTS SIGNATURE REQUIRED ON ATTACHED COPY OF APPLICATION." *Id.* at 173. The letter also stated, "The policy will be effective after the necessary underwriting information has been received, a rate developed and the full premium received." *Id.*

On May 21, 2002, the NFIP issued a policy that indicated that the limit of liability was $15,400 and the total premium was $900. On December 12, 2003, the NFIP issued a policy that indicated that the limit of liability was $13,400 and the total premium was $973. In September 2003, the property was damaged by flood. Morgan

sustained approximately $49,000 of damages to the property and his personal property as a result of the flood. NFIP paid Morgan $8,000 of insurance proceeds.

Morgan filed a complaint against TIA and alleged that TIA breached its duty to Morgan to exercise reasonable care, skill, and good faith diligence in obtaining flood insurance. TIA filed a motion for summary judgment and argued that TIA obtained the requested insurance, no special relationship existed between TIA and Morgan, the increased cost of flood insurance is not a legally cognizable damage, and causation does not exist. Morgan filed a cross motion for summary judgment in response and argued that TIA: breached its duty to Morgan to procure flood insurance in the amount requested; breached its duty to exercise reasonable skill and care in obtaining insurance; breached its duty to provide an accurate quote or to inform Morgan that the premium quoted was subject to change; breached its duty to exercise good faith diligence in obtaining Morgan's insurance; breached its duty to inform Morgan that he was not insured for the amount requested; and breached its duty to exercise reasonable care and skill in subsequent applications. After a hearing, the trial court entered the following order:

\* \* \* \* \*

After listening to the arguments of counsel, reviewing the briefs and designated materials, the court finds, determines and orders:

(1) The court has jurisdiction over the subject matter, as well as personal jurisdiction over the parties.

(2) Summary judgment is appropriate only if the pleadings and designated evidence show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). See

also: *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001), and *DeHayes v. Pretzels, Inc.*[,] 786 N.E.2d 779, 782[ ] (Ind.App.2003)[, *trans. denied* ].

(3) When there are no issues of material fact and the questions presented are purely questions of law, it is up to the court to make a determination by way of a summary judgment.

(4) The defendant, Tackitt Insurance Agency, Inc., is an insurance agency. As such, [TIA] acts as an insurance broker in obtaining policies for potential losses for customers through various insurance companies.

(5) The plaintiff, Dale Morgan, on November 3, 1999, requested [TIA] obtain [sic] homeowners insurance coverage on a home he was purchasing. Later, on November 11, 1999, the day of closing on the home, [Morgan] requested [TIA] obtain [sic] flood insurance for him so he could close and complete the purchase. [Morgan] did not want flood insurance, but had to have it before Lincoln Federal Savings Bank would give him a mortgage loan on the home since it was located in a flood plain.

(6) [TIA] acted as a broker in successfully obtaining both types of insurance for [Morgan]. It obtained flood insurance for [Morgan] through the National Flood Insurance Program ("NFIP") that is a federally backed program. The annual premium of $694.00 was quoted by NFIP and this figure was used at closing. The premium rates and coverage amounts are determined by NFIP based upon the location and elevation level of the

home. The flood insurance policy itself was marked "Tentative Rated Policy" when it was issued on February 24, 2000. In March of 2002, [Morgan] refinanced the home with the bank and was again required to obtain flood insurance. NFIP issued a second policy for a premium of $900.00 with coverage of $15,400.00. Later, NFIP amended the coverage to $13,400.00 on the second policy.

(7) [Morgan]'s complaint alleges that [TIA] was negligent because it failed (a) to obtain the proper amount of coverage; (b) it failed to advise [Morgan] of the drastic increase in the cost of flood insurance; and (c) it failed to notify [Morgan] that he had no coverage for a period of time from November of 2000 and April of 2002.

(8) [Morgan] alleges that [TIA] is liable for [Morgan]'s flood loss in September of 2003 of approximately $49,000.00 less the $8,000.00 paid by NFIP. He also seeks damages for the additional cost of the annual flood insurance premiums (apparently from November 11, 1999 until [Morgan] dies or sells the property). He alleges he would not have purchased the property had he known that flood insurance was going to cost $5,000.00 annually.

(9) The elements of negligence are: (a) duty owed by defendant to the plaintiff; (b) defendant's breach of duty; (c) that proximately causes; (d) plaintiff's damage.

(10) In Indiana, an insurance broker is under a "duty to exercise reasonable care, skill, and good faith in obtaining insurance." See: *Wyrick*

*v. Hartfield,* 654 N.E.2d 913 (Ind. Ct.App.1995).

(11) In the present case, [Morgan] has failed to provide designated materials showing that [TIA] had a special or higher duty beyond using reasonable care, skill and good faith in obtaining insurance for [Morgan]. See: *DeHayes Group v. Pretzels, Inc.,* supra., p. 782.

(12) From the evidence designated, the court concludes that [TIA] exercised reasonable care in successfully obtaining both homeowner's insurance and flood insurance on [Morgan]'s behalf.

(13) [TIA] had no duty or obligation to insure that future premiums for flood insurance on [Morgan]'s property would not go up or that the coverage amount would not be reduced by NFIP.

(14) [TIA], as a broker, had no duty to notify [Morgan] of the cancellation of the flood insurance by NFIP as this is controlled by Indiana statute whereby the insurance company (NFIP), as insurer, is obligated to notify the plaintiff/homeowner within the time limits. I.C. 27–7–12–3.

For all of the foregoing reasons, the court grants [TIA]'s Motion for Summary Judgment and denies [Morgan]'s Motion for Partial Summary Judgment.

*Id.* at 255–259.

The sole issue is whether the trial court erred by granting TIA's motion for summary judgment regarding Morgan's negligence claims.[1] Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a

---

**1.** Morgan does not challenge the denial of his    motion for summary judgment.

matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

■ Morgan argues that TIA breached its duty to exercise reasonable skill and care in obtaining insurance for Morgan. Indiana law requires an agent retained to procure insurance for another to use reasonable skill, care, and diligence to obtain the desired insurance. *Anderson Mattress Co., Inc. v. First State Ins. Co.*, 617 N.E.2d 932, 939 (Ind.Ct.App.1993), *trans. denied.* "An agent may thus be held to answer in damages if his principal suffers a loss after the agent has failed to obtain insurance." *Id.* "The agent also incurs a duty to inform

the principal if he is unable to procure the requested insurance." *Id.*

■ Specifically, Morgan argues that TIA breached its duty to procure insurance in the amount requested.[2] Initially, we address TIA's argument that the designated evidence does not support Morgan's claim that he requested $72,000 in flood insurance. TIA's designation of undisputed facts in support of its motion for summary judgment contains the following facts:

\* \* \* \* \*

2. On November 3, 1999, [Morgan] requested that TIA obtain homeowner's insurance. (Tackitt Deposition, p. 28).

3. On November 11, 1999, [Morgan] requested TIA obtain flood insurance for his new residence (Plaintiff's Answers to Interrogatories, No. 5).

\* \* \* \* \*

Appellant's Appendix at 11. TIA also designated the deposition of James Tackitt, the owner of TIA, which reveals the following exchange:

Q. Originally the first quote from your office was 693,000—was $693 for $72,000 worth of insurance.

A. Fifty thousand.

Q. Refer you back to Plaintiff's Exhibit 1.

A. Here is—one of the copies you gave me the top portion's off. The building coverage is $50,000. Is that what you have?

Q. And then there's—no. Then there's also $22,000 because there were—part

---

2. Morgan also argues that TIA breached the following duties: the duty to provide an accurate premium quote and to inform Morgan that the premium quote was tentative; the duty to exercise good faith diligence in obtaining Morgan's flood insurance; and the duty to exercise reasonable care and skill in subse-

quent applications. We need not address these arguments because we conclude that the trial court erred by granting TIA's motion for summary judgment regarding whether TIA breached its duty to procure insurance in the amount requested and TIA's duty to inform Morgan that he was not insured.

of it was done at 95 cents a hundred, then part at 60 cents a hundred. It was 95 cents a hundred for the first 50, but it was 60 cents a hundred for the remaining—

A. Okay, I'm sorry, I've misspoken on the dollar amount.

Q. So for $693 Mr. Morgan was supposed to have $72,000 in flood insurance for his home?

[TIA's Attorney]: I'll object to the form of the question.

A. Based off the base rate the government applied at that time, yes. That's what we signed and I believe that's exactly what it should be.

*Id.* at 26. Construing the reasonable inferences drawn from TIA's designated evidence in favor of Morgan, we conclude that a question of fact exists as to whether TIA was aware that Morgan requested flood insurance in the amount of $72,000.

Assuming that Morgan requested TIA to obtain $72,000 worth of flood insurance, we must address whether a question of fact exists regarding whether TIA obtained the requested amount of insurance. Morgan argues that "[t]here is no question that TIA *never* obtained a $72,000 flood insurance policy for Morgan." Appellant's Brief at 10–11. TIA argues that "insurance was, in fact, obtained." Appellee's Brief at 7. The designated evidence reveals that TIA obtained a quote of $693 from the NFIP for $72,000 worth of flood insurance. On February 24, 2000, the National Flood Insurance Program sent TIA a "TENTATIVE RATED POLICY," which stated " *COVERAGE LIMITS REDUCED* " and indicated that the limit of liability was $30,400 and the total premium was $694. Appellant's Appendix at 151. TIA did not obtain $72,000 worth of flood insurance that Morgan requested. Thus, there is at least a question of fact as to whether TIA met its duty of reasonable care.[3] *See, e.g.,*

---

**3.** TIA argues that "the only method by which [Morgan] could claim breach of a claimed duty is if a higher, special duty of care was alleged to exist" and argues that *The DeHayes Group v. Pretzels, Inc.,* 786 N.E.2d 779 (Ind. Ct.App.2003), *trans. denied,* controls the analysis. Appellee's Brief at 7. In *The DeHayes Group,* DeHayes served as an independent insurance broker for Pretzels, a manufacturer of pretzel snacks. *The DeHayes Group,* 786 N.E.2d at 780. DeHayes requested bids from insurance companies. *Id.* at 781. One of the insurance companies refused to quote insurance for Pretzels because, as they informed DeHayes, the sprinkler system had an inadequate water supply. *Id.* Pretzels chose Commercial Union's policy, which became effective on February 9, 1996. *Id.* On December 24, 1997, a fire consumed Pretzel's facilities. *Id.* Commercial Union paid Pretzels a total of $25,031,220. *Id.* Commercial Union filed a complaint on behalf of Pretzels under its right of subrogation against Shambaugh & Sons, Inc., and Simerman Construction Company, Inc., asserting that the defendants negligently built Pretzel's facilities. *Id.* The defendants filed a motion to amend its answer to assert a nonparty defense against DeHayes. *Id.*

Commercial Union alleged that DeHayes had a duty to notify Pretzels of any deficiencies in Pretzel's sprinkler system. *Id.* DeHayes filed a motion for summary judgment, which the trial court denied. *Id.* On interlocutory appeal, we held that "[a]n insurance broker, like DeHayes, has a duty to exercise reasonable care, skill, and good faith diligence in obtaining insurance" and "it is undisputed that DeHayes successfully obtained insurance for Pretzels." *Id.* at 782 (internal citation omitted). We then addressed whether DeHayes had a greater duty due to a long term relationship between the parties or some other special circumstances. *Id.* Here, unlike in *The DeHayes Group,* a question of fact remains as to whether TIA successfully obtained the requested insurance for Morgan. Thus, at issue is whether TIA breached its duty to exercise reasonable care, skill, and good faith diligence in obtaining the insurance, and not whether TIA owed Morgan a higher duty.

TIA also argues that in *DeWyngaerdt v. Bean Ins. Agency, Inc.,* 151 N.H. 406, 855 A.2d 1267 (2004), the "Supreme Court of New Hampshire addressed a similar contention and refused to find an agent liable on an even

*Anderson Mattress Co., Inc.*, 617 N.E.2d at 939 (holding that "there is at least a question of fact as to whether [the broker] met its duty of reasonable care.... [The broker] obtained for its principal a policy with coverage which was far different from that which the principal ... desired. The difference in coverage substantially harmed [the principal] because [the principal] did not receive full coverage for its fire loss under the specific policy [the broker] obtained for [the principal] but would have received full coverage under the ... policy it requested.... Under these circumstances it is for the finder of fact to determine whether [the broker] met its duty of care").

Morgan also argues that TIA "breached its duty to inform [him] that he was not insured for the $72,000 he requested." Appellant's Brief at 17. TIA concedes that TIA did not discuss the rating mechanism resulting in the reduced coverage with Morgan. TIA argues that "[t]his is logical, because Mr. Morgan apparently did not want flood insurance. Had Lincoln Federal Savings Bank not required flood insurance, Mr. Morgan would not have had it." Appellee's Brief at 2. TIA also argues that Morgan failed to examine the coverage that was provided but does not cite to any designated evidence indicating that

TIA informed Morgan of the coverage. Thus, a question of fact exists regarding whether TIA informed Morgan that TIA failed to obtain the requested insurance. *See Anderson Mattress Co., Inc.*, 617 N.E.2d at 939 ("The agent also incurs a duty to inform the principal if he is unable to procure the requested insurance.").

In summary, we conclude that a question of fact exists at least to whether TIA obtained the requested insurance and whether TIA informed Morgan that it did not obtain the requested insurance. Thus, the trial court erred by granting TIA's motion for summary judgment.

For the foregoing reasons, we reverse the trial court's grant of summary judgment to TIA and remand for proceedings consistent with this opinion.

Reversed and remanded.

NAJAM, J. and ROBB, J. concur.

---

clearer factual pattern than is present here." In *DeWyngaerdt*, Superior Tree Service ("Superior Tree") requested Bean Insurance Agency, Inc. ("Bean") to obtain a policy that would provide "full coverage." *DeWyngaerdt*, 855 A.2d at 1269. Bean recommended a policy, which excluded coverage for "wrongful cutting." *Id.* Superior Tree wrongfully cut a tree and filed a notice of claim with its insurer, which denied the claim because of the "wrongful cutting" exclusion. *Id.* Superior Tree filed suit against Bean and argued that Bean was negligent in failing to advise Superior Tree of the exclusion in the policy. *Id.* The New Hampshire Supreme Court recognized that "where a specific request is made for a particular type of insurance coverage, an insurance agent owes a duty to the

insured to procure such coverage," but held that "Superior Tree's request for 'full coverage,' however, was too broad and too vague to constitute a *specific request* for the particular coverage of 'wrongful cutting.'" *Id.* at 1270. The court went on to hold that "[a] request for 'full coverage,' 'the best policy,' or similar expressions does not place an insurance agent under a duty to determine the insured's full insurance needs, to advise the insured about coverage, or to use his discretion and expertise to determine what coverage the insured should purchase." *Id.* Here, unlike in *DeWyngaerdt*, there is evidence that Morgan did not make a vague request but specifically asked for $72,000 worth of insurance. Thus, we find *DeWyngaerdt* distinguishable.