KISTLER et, Plaintiffs-Appellees, v. WATSON et, Defendants-Appellants.

Ohio Appeals, Seventh District, Mahoning County.

No. 3835. Decided October 25, 1957.

Michael J. Kosach, Harold H. Hull, Youngstown, for plaintiffs-appellees.

Manchester, Bennett, Powers & Ullman, Youngstown, for defendants-appellants.

## OPINION

Per CURIAM.

This case comes before this court on defendants' appeal on questions of law and fact from a judgment of the court of common pleas entered for plaintiffs in plaintiffs' action to enjoin defendants from daming North Jackson Ditch or by other artificial means stopping the flow of water therein and across their lands.

The case was submitted to this court upon a transcript of the docket and journal entries filed and the transcript of the testimony taken in the court of common pleas and additional testimony taken before a master commissioner appointed by this court.

The natural water course known as North Jackson Ditch flows across defendants' land in a general northeasterly direction, then upon and through plaintiffs' land, across which ditch defendants admittedly constructed a low dam on their land on the site of a hole twenty feet in diameter. This dam is on the west side of Route 45. Plaintiffs' land lies on the east side of the highway. To that hole water from a spring, to which reference is made later herein, was drained. Plaintiffs claim the dam stopped the natural flow of water across their lands, which lands are adjacent to and contiguous with defendants' land.

Defendants contend that except for a "small pool of water" 104 feet wide, about 100 feet long and 23 feet wide at the spillway, which spillway is four feet high, such dam does not interfer with nor obstruct the flow of water through such stream on plaintiffs' lands, although there is evidence that the stream was dry for the first time after construction of such dam. Such pool contains roughly 110500 square feet and has a capacity of 134,554 gallons, from which pool an estimated 1281 gallons evaporated each day during the month of September 1955, and which pool impounded water above such dam to the height of its spillway.

The pond created by defendants' dam is fed from surface water flowing along Ohio State Route 45 and the small spring, to which reference has been made, situated near the center of the road under Route 45. The spring has been flowing in excess of fifty years. The spring and surface water empty into a catch basin or manhole in the storm sewer situated on the west side of that highway and then drain into the pond above the spillway by pipes erected by defendants.

The commissioner found, in which finding we concur, "that the natural flow of the surface water and of that from the spring was over defendants-appellants' property and thence was carried through the Jackson Ditch onto plaintiffs-appellees' property"; that the "fee to the center of the highway is in each of the abutting owners; and that:—

"* * * said ditch is a natural water course and that both plaintiffs-

appellees and defendants-appellants are entitled to the reasonable use of the water flowing therein whether it emanates from the spring, from the surface of the road, or both."

A water course is defined in the **East Bay Sporting Club v. Miller, et al, 118 Oh St 360,** as:—

"3. A water course is a stream usually flowing in a particular direction in a definite channel having a bed, banks or sides and discharging into some other stream or body of water. It need not flow continuously, and may some times be dry or the volume of such water course may some times be augmented by freshets or water backed into it from a lake or bay or other extraordinary causes; but so long as it resumes its flow in a definite course in a recognized channel and between recognized banks, such stream constitutes a watercourse."

See also **Conobre, et al, v. Fritsch, et al, 92 Oh Ap 520,** where it is said:—

"The owner of land, upon which is located a spring, from which spring there flows a stream of water, has only the rights of a riparian owner in the spring and stream, where such stream, if allowed to follow its natural course without obstruction, would flow in a definite channel onto and across the land of an adjoining owner. The spring in such case is a part of the stream, and, as such, they both constitute a natural watercourse."

For the general law on the subject see **41 O. Jur., Section 15, pages 19 and 20; Section 17, pages 22 and 23; and Section 19, pages 23 and 24.**

The question presented in this case is as framed by the commissioner "whether under the circumstances of this case the erection and maintenance of the dam across Jackson Ditch by Defendants-Appellants constitutes an unreasonable use of such water as far as it affects the rights and necessity of the plaintiffs-appellees."

Defendants had a legal right to impound the water to create the pond provided they permitted water to reach the land of the plaintiffs, the lower riparian owner, in a substantially normal flow. **Ratcliffe v. Indian Hill Acres, Inc., 93 Oh Ap 231 at 240.**

It is clear to this court from the evidence briefly summarized herein that the erection and maintenance by defendants of such dam has materially affected the continuity of the flow and diminished the amount of water which unimpeded would otherwise flow on plaintiffs' land.

In **Akron Canal & Hydraulic Co. v. Fontaine, et al, 72 Oh Ap 93,** it is said in the second paragraph of the syllabus:—

"Water impounded behind a dam is not personal property and is not the subject of ownership. It is identified with the land as a corporeal hereditament, and the right in it is usufructuary only, to the owner of the underlying realty, in the absence of a specific conveyance of the uses."

Quoting from 67 Corpus Juris, Section 365, the court said at page 100 of the opinion written in Akron Canal & Hydraulic Co. v. Fontaine, supra, that:—

" "* * * Thus, while the owner of such dam and its pond, in the absence of rights vested in others by grant, prescription, or otherwise

is entitled to the exclusive use of the water stored or the power thereby created, this use of the water must be reasonable and must not unreasonably diminish the natural flow, because the rights of the dam and pond owner are subject to the reasonable use of the stream by other dam owners and riparian proprietors.' "

There is evidence that defendants have ample water for their cattle from a deep well, and that the number of cattle using that water varies from 50 to 116 head, and that defendants use the water in the pond only "for watering a few cattle and for fire protection." There is evidence that the fully equipped Jackson Township fire station is situated about one thousand feet south of the farm of defendant Watson, thus ordinarily obviating the necessity of relying upon the water in the pond for fire protection, which evidence cannot justify defendants impounding the water flowing through North Jackson Ditch for fire protection purposes to the injury of plaintiffs, a lower land proprietor.

Also there is evidence that for nearly half a century plaintiffs have depended upon and used the water from North Jackson Ditch for a water supply for live stock, which water they pumped to the buildings where such live stock were housed. Such livestock numbered twenty-five head of cattle, two horses and thirty hogs on the day of trial in the trial court.

We believe, as the Commissioner found, that:—

"* * * The testimony introduced by defendants-appellants' witnesses, Earl Ressler, Elwood Ressler, and Clarence L. Wetzel, as to the advantages of such farm ponds for use for recreation is not persuasive here because the record is clear that defendants-appellants do not use this pond for that purpose."

We find, as the Commissioner found, that:—

"* * *The building of the dam in question has increased the rate of evaporation of the water. As was pointed out by the New York Court of Appeals in the case of Pierson v. Speyer, 178 N. Y. 270, 70 N. E. 799, the increased evaporation would not technically entitle defendants-appellants (referring to the parties in that case) to equitable relief against the maintenance of the dam, in the absence of a further finding that defendants-appellants (referring to the parties in that case) use of the stream under the circumstances was unreasonable. In that case the court reiterated the general principle that 'the right of no one is absolute, but is qualified by the right of others to have the stream substantially preserved in its natural size, flow and purity.'

"Under the circumstances of this case at hand, the Commissioner finds that the rate of evaporation shown in the record is an important element to be considered.

"As a finding of fact, the Master Commissioner finds that the plaintiffs-appellees have proved the allegations as alleged in the petition and that they are entitled to the relief prayed for.

"The Commissioner finds that the erection and maintenance of the dam across Jackson Ditch by defendants-appellants constitutes an unreasonable use of such water and has deprived plaintiffs-appellees of the natural flow of the stream."

This cause is in a court of chancery and it appearing that substantial justice would be accomplished between the parties if the water from the spring in State Route 45 were allowed to flow in its natural course without diversion to the defendants' pond it is therefore decreed that the defendants restore within sixty days the flow of water from the spring as it did flow in its natural course without the artificial piping or diversion. The costs of this action, being, however, assessed against the defendants-appellants since it appears that their action in diverting the flow of the water from the spring in question was illegal and unauthorized.

Decree accordingly.

NICHOLS, PJ, GRIFFITH and PHILLIPS, JJ, concur.