KEYSER, JANIS BRUSTARES, Associate Judge.
Florida Insurance Guaranty Association (FIGA) appeals a non-final order granting B.T. of Sunrise Condominium Association’s Motion for Summary Judgment and denying FIGA’s Cross-Motion for Summary Judgment. We affirm because the trial court properly found that there are seven separate covered claims involved in this action within the meaning of section 631.57(2), Florida Statutes (2008), and properly ordered seven separate appraisals in accordance with the terms of the insurance policy and applicable law.
Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 131 (Fla.2000). An order compelling an appraisal under an insurance policy is reviewed de novo. Sunshine State Ins. v. Corridori, 28 So.3d 129 (Fla. 4th DCA 2010); Fla. Ins. Guar. Ass’n. v. Castilla, 18 So.3d 703, 704 (Fla. 4th DCA 2009).
The parties do not dispute the following salient facts. B.T. of Sunrise Condominium Association, Inc. (Sunrise) had an insurance policy with Southern Family Insurance Company (SFIC) covering a period from February 3, 2005, to February 3, 2006. The declarations page indicates that the policy covers seven buildings, the total limits are for $2,906,719, and the total premium is $17,518.[1] The policy indicates a deductible of $2,500 for each building.
On October 24, 2005, all seven buildings at Sunrise were damaged by Hurricane Wilma. Sunrise filed a claim with SFIC for each of the seven buildings. SFIC assigned a single claim number, 110004088, and added a suffix for each building (giving them numbers 1-7). SFIC subsequently issued seven separate checks totaling $268,994.54, and divided the policy limit between the seven buildings, depending on the valuation of each building and the damage attributable to each building.
When SFIC became insolvent, FIGA took over the obligations of SFIC pursuant to section 631.57(l)(a)l., Florida Statutes (2008). Sunrise was not satisfied with the amounts paid by SFIC and requested supplemental payments from FIGA. FIGA *1041 tendered $299,900, which represented the statutory cap of $300,000 that FIGA was required to pay on each covered claim pursuant to section 631.57, Florida Statutes (2008), less the $100 FIGA deductible. FIGA took the position that the claims constituted a lump sum obligation for only one claim under the SFIC policy and that FIGA had only one $300,000 limit of liability under section 631.57(l)(a)2., Florida Statutes. Sunrise remained dissatisfied with the payment and demanded appraisal, which was refused by FIGA. Thereafter, Sunrise filed a Petition for Declaratory Relief, seeking a determination by the trial court that Sunrise was entitled to $300,000 on each of the seven properties pursuant to the insurance policy.
The parties filed cross-motions for summary judgment and the trial court ruled in favor of Sunrise, ordering FIGA to select an appraiser for each of the seven separately covered claims. FIGA appealed, and this court has jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv), which allows review of orders that determine entitlement to an appraisal under an insurance policy. This case presents an issue of first impression, as both parties agree there is no case law interpreting section 631.57(l)(a)2 in the context raised in this appeal.
Section 631.57 entitled “Powers and duties of the association” provides, in pertinent part:
(1) The association shall:
(a) Be obligated to the extent of the covered claims existing:
[[Image here]]
2. The obligation under subparagraph 1. includes only the amount of each covered claim which is in excess of $100 and is less than $300,000, ...
Section 631.54(3) defines a “covered claim” as:
“Covered claim” means an unpaid claim, including one of unearned premiums, which arises out of, and is within the coverage, and not in excess of, the applicable limits of an insurance policy to which this part applies, issued by an insurer, if such insurer becomes an insolvent insurer. ...
(Emphasis added).
Section 631.55(1) mandated the creation of FIGA, and section 631.51(1) provides that its purpose is to “[p]rovide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer.” FIGA has the same obligations as SFIC, the insolvent insurer, and FIGA’s responsibility is directly linked to SFIC’s contractual obligations. See Fla. Ins. Guar. Ass’n. v. Johnson, 654 So.2d 239 (Fla. 4th DCA 1995). Johnson acknowledges that “[i]t is established law in Florida that after an insurer becomes insolvent, FIGA ‘stands in the shoes’ of the insolvent insurer, and, pursuant to section 631.57(3)(b), Florida Statutes (1991), will ‘be deemed the insurer to the extent of its obligations on the covered claims, and, to such extent, shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.’ ” Id. at 239-40 (quoting Peoples v. Fla. Ins. Guar. Ass’n, 313 So.2d 40, 41 (Fla. 2d DCA 1975)) (emphasis in Johnson).
The court finds that there is a difference between a policy which contains an “aggregate” value for several insured buildings, and Sunrise’s policy with SFIC which had separate schedules for each of the seven buildings. Under the applicable policy, Sunrise could not apply nor transfer the limit of insurance coverage for one building to another building which might have been under-valued and, thus, under- *1042 insured. If FIGA’s position were correct, even if only one building had been damaged by the hurricane, Sunrise would have been entitled to the total aggregate policy limit of insurance coverage for all seven buildings of $2,906,719. We find that such a construction was not intended by the SFIC policy.
The Indiana case of Anderson Mattress Co. v. First State Insurance Co., 617 N.E.2d 932 (Ind.App. 5th Dist.1993), is instructive and supports our finding that each separately scheduled building is covered by a separate contract of insurance with its own recoverable amount. In Anderson Mattress, the Anderson company manufactured mattresses and obtained an insurance policy from First State covering its warehouses. The application for insurance requested blanket coverage, not scheduled coverage. An Anderson employee called the agent to make sure it was blanket coverage. Later, the insurance company contended that it had provided specific coverage, not blanket coverage, and limited recovery for each scheduled piece of property to the value assigned on the schedule, paying Anderson $1.3 million rather than $1.8 million.
The trial court denied First State’s motion for summary judgment. The Fifth District of Indiana determined that the policy provided specific coverage, but that there were fact questions regarding whether the brokers breached their duty to procure blanket coverage. Anderson discusses the difference between blanket and specific coverage, noting that First State quoted 15 Couch on Insurance 2d 54:83 for the proposition that a schedule of property values in an insurance policy renders the policy coverage specific and not blanket:
A distinction must be made between a policy which speaks in terms of a lump-sum obligation or value of the property and one which separately schedules different items of property. In the latter case, each separately treated item of property is in effect covered by a separate contract of insurance and the amount recoverable with respect to a loss affecting such property is determined independently of other items of property.
617 N.E.2d at 935.
Upon application of Anderson, the SFIC policy, in the present case, provided separate contracts of insurance since it spoke in terms of separately scheduled buildings. The schedule of property values, which was included in the SFIC insurance policy, made the coverage specific, not blanket. Since each building was separately listed on the declarations page, with a separate covered amount and separate premiums listed for each building, each of these seven separate claims should have its own statutory cap of $300,000.
The majority of the cases relied on by FIGA are distinguishable because these cases address insurance policy liability coverage for wrongful death and derivative tort claims, rather than first party property damage claims. See Allstate Ins. Co. v. Clohessy, 32 F.Supp.2d 1333, 1337 (M.D.Fla.1998) (holding that “Florida courts have uniformly held that loss of consortium and wrongful death survivor actions are subject to the per-person limit of liability”); Fla. Ins. Guar. Ass’n, Inc. v. Cole, 573 So.2d 868, 870-71 (Fla. 2d DCA 1990) (holding survivors entitled only to per person coverage since wrongful death claim was only one claim); Mackoul v. Fid. & Cas. Co. of N.Y., 402 So.2d 1259, 1260 (Fla. 1st DCA 1981) (finding that the limits of liability were not affected by the number of causes of action that might accrue from the bodily injury of a single person); Biondino v. S. Farm Bureau Cas. Ins. Co., 319 So.2d 152, 154 (Fla. 2d *1043 DCA 1975) (finding insurer limited its liability to each person for damages because of bodily injury sustained by one person).
We conclude that the lower court properly construed the applicable FIGA statutory language in determining that Sunrise is not limited to FIGA’s one lump sum aggregate claim payment of $300,000 for the total damages caused to the seven individually scheduled buildings and is entitled to the policy’s mandated appraisal process. The order granting Petitioner’s Motion for Summary Judgment and denying Respondent’s Motion for Summary Judgment is hereby affirmed.
GROSS, C.J., and CIKLIN, J., concur.

. The buildings were listed separately in the "Description of Premises,” and the coverage and premiums are separate for each building. Building 1 is insured for $208,048, with a premium of $1,282; building 2 is insured for $725,483, with a premium of $4,266; building 3 is insured for $609,926, with a premium of $3,587; building 4 is insured for $341,349, with a premium of $1,990; building 5 is insured for $341,349, with a premium of $1,990; building 6 is insured for $472,514, with a premium of $2,755; building 7 is insured for $208,046, with a premium of $1,282.