On Motion for Rehearing Granted

SCHWARTZ, Senior Judge.
The issue in this case is whether the Florida Insurance Guaranty Association is liable for the homeowner’s insurance claim in question. In the summary declaratory judgment now under review, the trial judge held that it was. He was right.
The operative facts, which are entirely undisputed, began on September 1, 2000, when the appellee purchased a homeowner’s liability policy covering his Florida home from Green Tree Insurance Company. At that time, Green Tree was a foreign so-called “surplus lines” carrier, which, if nothing else happened, was not subject to the FIGA Act, see §§ 631.50. et seq., Fla. Stat. (2011), by statute, § 631.52(13), Fla. Stat. (2011), and by its own terms. See Fla. Ins. Guar. Ass’n v. Johnson, 654 So.2d 239, 239-40 (Fla. 4th DCA1995).
On December 31, 2000, however, a decisive “something else” did happen. On that date, Green Tree was acquired and merged into Aries Insurance Co. which was a Florida domiciliary subject to FIGA, and which acceded to all of Green Tree’s outstanding contractual obligations. Subsequently on July 30, 2001, while the so-called “second” Aries Company was in viable existence, Castillo was injured on Karelas’ premises and filed a personal injury claim and suit against Karelas and Aries II, which it duly defended in accordance with the policy. On November 14, 2002, Aries II became defunct and went *2 into receivership, this triggering FIGA’s liability, if any, under the statute. FIGA then disclaimed its responsibility for the defense and coverage of the pending action, pointing to the date that the policy had been issued by a non-FIGA insurer. The claimant and insured contended that the decisive date was that of the accident which occurred while FIGA covered Aries II. FIGA now appeals the holding that the later date was determinative. We affirm.
The result below and its affirmance are required by the unambiguous language of section 631.54(6) which provides that an “insolvent insurer,” subject to the terms of the act:
means a member insurer[1] authorized to transact insurance in this state, either at the time the policy was issued or when the insured event occurred, and against which an order of liquidation with a finding of insolvency has been entered by a court of competent jurisdiction if such order has become final by the exhaustion of appellate review (emphasis added).
Since there is no question Aries II was a member insurer on July 30, 2001, the date that the claim arose, there is no legitimate argument contrary to the proposition that FIGA is responsible.
The correctness of this decision is made clear by the case relied upon by FIGA, Mississippi Ins. Guaranty Ass’n v. Goldin Properties, Inc., 893 So.2d 1062, 1064 (Miss.Ct.App.2004). In Goldin Properties, as here, the policy was purchased pre-merger, but unlike here, the insured event also occurred pre-merger. Considering statutory provisions similar to our own and concluding the issue to be “one of statutory interpretation,” the Mississippi court observed that the insurer was not licensed to transact insurance in Mississippi either at the time the policy was issued or when the insured event occurred, and thus the insurer was not an “insolvent insurer” within the meaning of that state’s IGA statute.[2] Id. at 1064.
Here, the opposite facts mandate an opposite result. As the trial judge concluded:
[Tjhere are no genuine issues of material fact [the] Plaintiffs insurer was a ‘member insurer’ at the time of the insured event (July 30, 2001) as defined by Florida Statute 631.54(6) and [the] Plaintiffs’ insurer was an ‘insolvent insurer’ as defined by Florida Statute 631.54(7).
For these reasons, the appellees’ motion for rehearing of Florida Insurance Guaranty Ass’n v. Karelas, 37 Fla. L. Weekly D1678 (Fla. 3d DCA July 18, 2012), is granted; that opinion is set aside and the judgment under review is
*3 Affirmed.[3]

1. Section 631.54(7), Florida Statutes (2011) provides:
"Member insurer” means any person who writes any kind of insurance to which this part applies under s. 631.52, including the exchange of reciprocal or interinsurance contracts, and is licensed to transact insurance in this state.

. "Covered claim” as defined by Mississippi Code Annotated section 83-23-109(0 is: "an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer....” An "insolvent insurer” as defined by Mississippi Code Annotated section 83-23-109(g) is: "an insurer licensed to transact insurance in this state either at the time the policy was issued or when the insured event occurred and against whom an order of liquidation with a finding of insolvency has been entered by a court of competent jurisdiction....”
Goldin Props., 893 So.2d at 1063.

. This analysis is certainly in keeping with the stated purpose of the Act. See Fla. Ins. Guar. Ass'n v. B.T. of Sunrise Condo. Ass’n, 46 So.3d 1039, 1041 (Fla. 4th DCA 2010) ("Section 631.55(1) mandated the creation of FIGA, and section 631.51(1) provides that its purpose is to ‘[pjrovide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer.' ”).