CARLOS E. MENDOZA, UNITED STATES DISTRICT JUDGE
THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Doc. 49), to which Plaintiff filed a Response (Doc. 53), and Defendant filed a *1277 Reply (Doc. 54). For the reasons stated herein, Defendant's Motion will be granted in part and denied in part.
I. BACKGROUND
Plaintiff brought this suit against Defendant, alleging breach of contract for failure to pay benefits due under the commercial property insurance policy ("the Policy"). Defendant issued the Policy to Plaintiff for the period of March 26, 2016, through March 26, 2017. (Insurance Policy, Doc. 49-2, at 2). Plaintiff's insured property consists of thirteen buildings inside a condominium complex named Bahama Bay II located in Kissimmee, Florida. (Id. at 5, 57).
On or about December 9, 2016, a sinkhole appeared near Building 43. (Vidal Dep., Doc. 49-4, at 17: 8-25; Structural Engineering and Inspections ("SEI") Rpt., Doc. 53-3, at 1). After the sinkhole appeared, Building 43 was vacated and the building was declared unsafe. (Deatherage Dep., Doc. 49-5, at 17: 9-11; 21: 5-25). Building 43 remains unoccupied, (Doc. 49-4 at 127: 1-5), and after seven months, Plaintiff's board excused Building 43 condominium owners from paying association dues, (id. at 125: 19-126: 6).
Plaintiff submitted a claim to Defendant for benefits under the Policy, (Wilkinson Dep., Doc. 53-2, at 12: 1-25, 16: 7-14). Defendant investigated the loss, (Doc. 38 ¶ 9; Answer, Doc. 41, ¶ 9), accepted coverage for Building 43 under the Policy's Catastrophic Ground Cover Collapse ("CGCC") provision, (Wilkinsin Aff., Doc. 49-1, ¶ 14; Feb. 1, 2017 Letter, Doc. 53-8, at 2), and issued a check to Plaintiff in the amount of $ 290,000 for "immediate repairs," (Doc. 49-1 ¶ 15; Doc. 53-8 at 2). Defendant denied coverage as to buildings 42, 44, 45; repairs to the foundation of all buildings; the retaining wall and outdoor fences; security fencing and guards; land, landscaping, and patios; uncollected association dues; condominium unit owner property; and matching damages.
The CGCC provision of the Policy states:
We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:
(a) The abrupt collapse of the ground cover;
(b) A depression in the ground cover clearly visible to the naked eye;
(c) Structural damage to the building, including the foundation; and
(d) The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.
However, structural damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.
(Doc. 49-2 at 27).
After receiving the initial payment from Defendant, Plaintiff installed underpinning to help stabilize Building 43 as well as to pay attorneys, public adjusters, and for security at the building. (Doc. 49-4 at 151: 5-25). At the time Defendant accepted coverage, it also requested Plaintiff provide a Proof of Loss. (Doc. 53-8 at 2). Plaintiff sent Defendant a Proof of Loss, which Defendant rejected as incomplete. (Doc. 53-2 at 84: 1-16, 92: 3-93: 20; Proof of Loss, Doc. 53-12 at 2-6).
In August 2017, Plaintiff filed suit alleging that Defendant breached the insurance contract by failing to provide additional coverage. (See generally Compl., Doc. 2). Defendant filed an Answer, Affirmative Defenses, and Counter-claim. (See Doc. 5).
*1278 Plaintiff subsequently amended the complaint twice. (See Doc. Nos. 22, 38). The Second Amended Complaint (Doc. 38) is now the operative complaint. Defendant filed Answers and Affirmative Defenses, (Doc. Nos. 29, 41), in response to each Amended Complaint but Defendant never realleged its Counter-claim. Defendant now moves for summary judgment.
II. LEGAL STANDARD
Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." Id. "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Allen v. Bd. of Pub. Educ. , 495 F.3d 1306, 1313-14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett , 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
However, once the moving party has discharged its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S.Ct. 2548 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." Evers v. Gen. Motors Corp. , 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." Allen , 495 F.3d at 1314.
III. ANALYSIS
As a preliminary matter, because Defendant never realleged its Counter-claim in its subsequent Answers, it has been abandoned. See Steadfast Ins. Co. v. Sec. Eng'rs, Inc. , 2015 U.S. Dist. LEXIS 7203, *2-4, 2015 WL 300412, *1 (N.D. Ala. January 22, 2015) ("Because [plaintiff] filed an amended complaint and [defendant] did not reassert its counterclaims in its answer to the amended complaint, [defendant] abandoned the counterclaims asserted in its original answer.") (citing the Pa. Nat'l Mut. Cas. Ins. Co. v. Snider , 996 F.Supp.2d 1173, 1180 n.8 (M.D. Ala. February 11, 2014) ). Thus, insofar as Defendant's Motion seeks summary judgment on its Counter-claim, it will be denied.
A. Buildings 42, 44, 45
As stated above, Defendant denied coverage for Buildings 42, 44, and 45 altogether. Plaintiff asserts that this denial is a breach of the Policy. "Under Florida law, insurance contracts are construed according to their plain meaning." James River Ins. Co. v. Ground Down Eng'g, Inc. , 540 F.3d 1270, 1274 (11th Cir. 2008) (quoting Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co. , 913 So.2d 528, 537 (Fla. 2005) ). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Taurus Holdings, Inc. , 913 So.2d at 532 (quotation omitted). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the another limiting coverage, the insurance policy is considered ambiguous."
*1279 Auto-Owners Ins. Co. v. Anderson , 756 So.2d 29, 34 (Fla. 2000). If a policy is ambiguous, it "should be construed liberally in favor of the insured and strictly against the insurer." State Farm Fire & Cas. Co. v. CTC Dev. Corp. , 720 So.2d 1072, 1076 (Fla. 1998) (citing Nat'l Merch. Co., Inc. v. United Serv. Auto. Ass'n , 400 So.2d 526, 530 (Fla. 1st DCA 1981) ).
Whether Defendant breached the insurance agreement for failing to issue coverage for Buildings 42, 44, and 45 hinges on whether the insurance policy is considered a "blanket" policy, or a "scheduled" policy. In this context, a blanket policy is a policy which puts an overall "blanket" limit of insurance on all property owned by the insured. See 5 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 41.02[2] (2018). As applicable here, if the Policy is a blanket policy, Defendant would owe Plaintiff for all damage occurring to the covered property-buildings 42, 44, 45-resulting from one covered cause of loss up to the policy limit. On the other hand, a scheduled policy typically schedules separately each piece of covered property into distinct insurance contracts. Here, if the Policy is scheduled, each piece of covered property must qualify for coverage independently of one other, as the policy is not one, but thirteen separate policies-one for each scheduled building. Florida Ins. Guar. Ass'n v. B.T. of Sunrise Condo. Ass'n, Inc. , 46 So.3d 1039, 1042 (Fla. 4th DCA 2010) (finding "each separately scheduled building is covered by a separate contract of insurance with its own recoverable amount"). Meaning, each building must separately meet the requirements for CGCC in order to qualify for coverage under the policy. See COUCH ON INSURANCE at § 175:90.
The most obvious example of a blanket policy would be a policy that does not differentiate between multiple sites or pieces of property, and which only contains a single premium, deductible, and limit of insurance. See 5 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 41.02[2] (2018). For a scheduled policy, the classic example would be a policy with separately delineated sites or properties, as well as separate deductibles and limits of insurance. These policies "typically identify the covered properties by name, address or other description in a declarations page and expressly exclude coverage for all property not so identified." NEW APPLEMAN ON INSURANCE LAW at § 41.02[2]. Scheduled policies can have one or multiple premiums. See W. Food Stores, Inc. v. Hartford Fire Ins. Co. , 417 F.2d 1219, 1221-22 (7th Cir. 1969).
Here, the Policy has the key elements of a scheduled policy. The Policy describes the insured premises by reference to a "Statement of Values," also called a "Schedule of Covered Premises," which is a list of thirteen buildings separately identified by address. Normally, reference to this type of "statement of values" indicates that the policy is a scheduled policy. Landmark Am. Ins. Co. v. Pin-Pon Corp. , 155 So.3d 432, 438 (Fla. 4th DCA 2015) (citing Fair Grounds Corp. v. Travelers Indem. Co. of Illinois , 742 So.2d 1069, 1072 (La. Ct. App. 1999) ). The Policy never references any overall or combined limit of insurance, and instead each of the thirteen buildings has its own limit of insurance, which is the most the insurer will pay as to the specified building "for loss or damage in any one occurrence." (Doc. 49-2, at 56, 19 ¶ C). Though there is one deductible per occurrence, the separate scheduling of the premises plus the separate limits of insurance show that this Policy, read as a whole, is a scheduled policy.
Because the Policy is a scheduled policy, whether Defendant breached the Policy by failing to provide coverage for *1280 Buildings 42, 44, and 45 depends on whether each of the buildings independently qualified for coverage. In order to qualify for the CGCC Coverage at issue here, "all of the following" must have occurred to each building individually:
(a) The abrupt collapse of the ground cover;
(b) A depression in the ground cover clearly visible to the naked eye;
(c) Structural damage to the building, including the foundation; and
(d) The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.
(Doc. 49-2 at 27). Only Building 43 meets all four prongs necessary for CGCC coverage, as only Building 43 was ordered to be vacated by a governmental agency. (Interogg., Doc. 49-6, ¶ 5; Doc. 49-4 at 141:18-142:11). Buildings 42, 44, and 45 have not been condemned or ordered to be vacated. Accordingly, Defendant did not breach the contract by refusing to issue coverage under the Policy for Buildings 42, 44, and 45 based on CGCC, and Defendant is entitled to summary judgment on Counts III, IV, and V of the Complaint.
B. Retaining Wall and Fence
Defendant argues that it did not breach the insurance contract for failing to issue coverage for the retaining wall and outdoor fences allegedly damaged by the CGCC. According to the Policy, Defendant "will pay for direct physical loss or damage to Covered Property caused by or resulting from the catastrophic ground cover collapse." (Doc. 49-2 at 27). Thus, the retaining wall and fence must be considered covered property under the Policy to be covered under the CGCC provision. They are not. The Policy explicitly excludes from the definition of Covered Property "[r]etaining walls that are not part of a building" and "[f]ences" that are "outside of buildings."[1] (Id. at 15-16). The Policy does not define what it means to be "part of" or "outside of" a building.
"Under Florida law, when an insurance policy provision is not defined, a court should construe the undefined term according to the meaning a person of ordinary intelligence would reasonably give it." Pinzon v. First Liberty Ins. Corp. , 2013 U.S. Dist. LEXIS 141676, *11, 2013 WL 5487027, *4 (M.D. Fla. September 30, 2013) (citing Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. , 412 F.3d 1224 (11th Cir. 2005) ). The retaining wall is located behind the buildings and is a "freestanding wall" that is "not connected to [any] building." (Doc. 49-4 at 96:20-97:1; Anderson Aff., Doc. 53-16, ¶ 37; Photographs, Doc. 49-8). Similarly, the fence behind the retaining wall is outside and not connected to any building. (See generally Doc. 49-8). Accordingly, a person of ordinary intelligence would find that the retaining wall, as well as the fence parallel to the wall, are not covered property because they are not connected any building. Defendant did not breach the contract by denying coverage of the retaining wall and fence under the CGCC provision and is entitled to summary judgement on Count II of the Complaint.
C. Land, Landscaping, Foundations, and Patios
Plaintiff seeks damages from Defendant for repairs to land, landscaping, foundations, and patios. Defendant argues that the Policy clearly these items from CGCC coverage, as they are not covered *1281 property. Defendant is correct. The Policy unequivocally states:
2. Property Not Covered
Covered Property does not include: ...
d. Bridges, roadways, walks, patios, or other paved surfaces; ...
f. The cost of excavations, grading, backfilling or filling;
g. Foundations of buildings, structures, ... if their foundations are below:
(1) The lowest basement floor; or
(2) The surface of the ground, if there is no basement;
h. Land (including land on which the property is located), water, growing crops or lawns;
p. The following property while outside of buildings: ...
(2) Fences... trees, shrubs or plants (other than "stock" of trees, shrubs, or plants ), all except as provided in the Coverage Extensions
(Doc. 49-2 at 16-17) (emphasis added). Patios, land, and landscaping to the extent landscaping includes lawns, trees, shrubs, or plants, are not covered by the Policy. Additionally, foundations that are below the surface of the ground are explicitly not covered by the Policy. Plaintiff has failed to present any evidence that the foundations here are above ground.
Defendant is entitled to summary judgment on Plaintiff's claim for damages relating to patios, land, landscaping, and for foundations below the ground.
D. Security Guards or Security Fencing
Defendant next moves for summary judgment on Plaintiff's claim that Defendant is liable for the cost of the security fencing and guards around Building 43.
The Policy states that Defendant "will pay for direct physical loss or damage to Covered Property ... caused by or resulting from any Covered Cause of Loss." (Doc. 49-2 at 15). So, to be covered under the Policy, the damage must be actual property damage or loss. The cost of security guards and security fencing for Building 43 is not property damage, or "physical loss ... to Covered Property," but is an economic loss. There is nothing in the Policy that covers economic loss. See Colony Ins. Co. v. Montecito Renaissance, Inc. , No. 8:09-cv-1469-T-30MAP, 2011 WL 4529948, at *3-4 (M.D. Fla. Sept. 30, 2011) (denying coverage under the insurance policy on summary judgment for several counts where economic injury was not property damage as understood by the policy); James River Ins. Co. v. Arlington Pebble Creek, LLC , 188 F.Supp.3d 1246, 1255-56 (N.D. Fla. 2016) (holding no duty to defend because underlying action did not seek damages "from physical injury to tangible property" per the policy, "but instead [sought] economic damages").
Moreover, even if the Policy did provide coverage for economic losses, two other sections also exclude these specific costs from coverage. First, the Policy expressly excludes from coverage "loss or damage caused directly or indirectly by ... [t]he enforcement of any ordinance or law ... [r]egulating the construction, use or repair of any property." (Doc. 49-2 at 29). The Policy also states that "[i]n the event of loss or damage covered by this Coverage Form ... [t]he cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property." (Id. at 20). Therefore, even if Plaintiff proved that the security guard and fencing were mandated by the county, these costs would be excluded because they would be incurred due to the enforcement of a county ordinance or law regulating the use or repair of the property. Defendant is entitled to summary judgement on Plaintiff's *1282 claim that it is liable for the costs of security for Building 43.
E. Uncollected Association Dues
Defendant also moves for summary judgement on Plaintiff's claim that Defendant is liable for uncollected association dues for Building 43. Uncollected association dues are akin to lost business income and are an economic loss. See Universal Image Prods., Inc. v. Fed. Ins. Co. , 475 F. App'x. 569, 573 (6th Cir. 2012) (finding that lost business income "[is] not [a] tangible, physical los[s], but [an] economic los[s]"). As discussed above, the Policy only provides coverage for physical property damage, not economic losses. Accordingly, Defendant is also entitled to summary judgment on Plaintiff's claim for uncollected association dues.
F. Condominium Unit Owner Property
Defendant asserts that it is not liable for any damages claimed by Plaintiff that are for property within individual units, owned by condominium owners, in any of the Buildings. Plaintiff's Response argues that because these damages are "certainly caused by or resulting from the CGCC covered cause of loss," Defendant is liable for them. (Doc. 53 at 17).
Under Florida law, the insured has the burden of proving a claim is covered by the insurance policy, the insurer has the burden of proving an exclusion to coverage, and the insured also has the burden of proving an exception to a policy exclusion. Markel Int'l Ins. Co. v. Brisas Del Yunque Rest., Inc. , No. 6:09-cv-1989-Orl-35DAB, 2010 WL 11507703, at *3 (M.D. Fla. July 28, 2010) citing LaFarge Corp. v. Travelers Indem. Co. , 118 F.3d 1511, 1516 (11th Cir. 1997). Plaintiff has not met its burden of showing that the condominium unit owner's property falls within the Policy. The Policy states that it covers "direct or physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse." (Doc. 49-2 at 27). Plaintiff failed to make any argument that condominium property within individual units, owned by unit owners, qualified as Covered Property. Instead, it summarily argued that the damage to this property was caused by a CGCC and thus must be covered. In fact, Florida law makes it clear that property insurance issued to a condominium complex does not cover property within individual units. Section 718.111(11)(f) of the Florida Statutes covers insurance for condominium associations. It states:
(f) Every property insurance policy issued or renewed on or after January 1, 2009, for the purpose of protecting the condominium must provide primary coverage for:
1. All portions of the condominium property as originally installed or replacement of like kind and quality, in accordance with the original plans and specifications.
2. All alterations or additions made to the condominium property or association property pursuant to s. 718.113(2).
3. The coverage must exclude all personal property within the unit or limited common elements, and floor, wall, and ceiling coverings, electrical fixtures, appliances, water heaters, water filters, built-in cabinets and countertops, and window treatments, including curtains, drapes, blinds, hardware, and similar window treatment components, or replacements of any of the foregoing which are located within the boundaries of the unit and serve only such unit. Such property and any insurance thereupon is the responsibility of the unit owner.
Fla. Stat. § 718.111(11)(f) (emphasis added). Accordingly, Plaintiff has failed to *1283 meet its burden to show that property owned by condominium unit owners within the individual units is, or even can be, covered under the Policy. Defendant is entitled to summary judgment on Plaintiff's claim for these damages.
G. Matching Damages
On this issue, Defendant argues that it is entitled to summary judgment, that it is not liable for "matching" damages-i.e., the cost of making the old, non-damaged components aesthetically match the new components that were replaced or repaired due to the covered loss. Plaintiff's Response makes no argument regarding entitlement to matching damages other than to say in a footnote that whether incurred damages are for matching is a question of fact. While this is true, whether Defendant will be liable for matching damages per the Policy is a question of law for this Court to resolve. Plaintiff, in making no argument regarding entitlement to matching damages, has not met its burden to show these damages fall within the Policy. Moreover, the Policy states that it only covers "direct physical loss or damage." (Doc. 49-2 at 15). Matching damages are not within the Policy as the very premise of matching damages is that they are for the replacement of some building components not damaged so that they "match" the replaced components. Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp. , No. 11-60447-CIV, 2011 WL 6754063, at *10 (S.D. Fla. Dec. 22, 2011) (agreeing with Defendant insurer and finding them not liable for matching damages when "the policy provides coverage only for 'direct physical loss or damage' and does not cover the replacement of undamaged property to ensure 'matching' ") citing Strasser v. Nationwide Mut. Ins. Co. , No. 09-60314-CIV, 2010 WL 667945, at *1 (S.D. Fla. Feb. 22, 2010).
Summary judgment will be granted in favor of Defendant for these damages.
H. Failure to Mitigate
Finally, Defendant argues that the Policy dictates it is not liable for losses caused by Plaintiff's failure to mitigate damages. Additionally, Defendant requests that the Court enter summary judgment stating that Defendant owes no additional coverage under the Policy due to Plaintiff's failure to protect the Property following the CGCC. (Doc. 49 at 32-34). The Policy requires Plaintiff to "[t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." (Doc. 49-2 at 18-19). Defendant contends that Plaintiff did not take "all reasonable steps to protect to Covered Property from further damage" after the initial underpinning work.
However, whether Plaintiff took "all reasonable steps" to protect the property and whether other reasonable steps existed and should have been taken are questions of fact for a jury. Bartram, LLC v. Landmark Am. Ins. Co. , 864 F.Supp.2d 1229, 1240 (N.D. Fla. 2012) (holding that "[r]esolution of the issue involves disputed material facts, thus precluding summary judgment" when defendants "contend that [p]laintiff did not take reasonable steps to protect the property from further damage ... [and] [p]laintiff contests this matter"); see also Meritplan Ins. Co. v. Laughlin , 8:04-cv-1208-T-24EAJ, 2005 WL 1054027, at *5 (M.D. Fla. Apr. 29, 2005) (finding there to be a genuine issue of material fact when the court could not "determine ... what repairs were reasonable and necessary to protect the property"). The Court's determination that failure to mitigate is a question of fact is especially true where, as here, there is some undisputed evidence of repairs being performed-i.e., the initial underpinning. See *1284 McGuire v. Ryland Grp., Inc. , 497 F.Supp.2d 1347, 1356 (M.D. Fla. 2007) (holding that where there is evidence of some reasonable care undertaken in mitigation, whether it was sufficient is a question of fact for a jury). Accordingly, summary judgment for this proposition will be denied.
IV. CONCLUSION
Accordingly, it is ORDERED and ADJUDGED as follows:
1. Defendant's Motion for Summary Judgment (Doc. 49) is GRANTED in part and DENIED in part .
2. Defendant is granted summary judgment on Counts II, III, IV, and V, and on Plaintiff's claims for damages relating to the security fence, security guards, the land, landscaping, patios, foundations, uncollected association dues, condominium unit owner property, and matching.
3. The Motion is DENIED in all other respects.
DONE and ORDERED in Orlando, Florida on April 11, 2019.

Fences may be covered "as provided in the Coverage Extensions," but those provisions are not applicable here.